STATE v. THOMAS ARTHUR SOLEM AND OTHERS.

222 N. W. 2d 98.

September 27, 1974—No. 44045.

*Dorsey, Marquart, Windhorst, West & Halladay, Henry Halladay, Thomas Tinkham, William Martin,* and *Hvass, Weisman & King, Si Weisman,* and *Richard A. Williams, Jr.,* for appellants.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Chief Deputy Attorney General, *Jonathan H. Morgan,* Solicitor General, and *Peter W. Sipkins,* Assistant Solicitor General, for respondent.

Heard before Knutson, C. J., and Otis, Peterson, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

This is an appeal by defendant Holiday Magic, Inc., and defendants Thomas Solem and James Russell, who are "general distributors" of Holiday Magic products, from a judgment of conviction of operating a multi-level distributorship in violation of Minn. St. 325.79, subd. 2(2)(a). The appeal raises three issues: (1) whether the statute is unconstitutionally overbroad, (2) whether the statute is unconstitutionally vague and indefinite, and (3) whether the distribution plan participated in by defendants violated the statute. We affirm.

Defendant Holiday Magic, Inc., is a California corporation with its general offices and principal place of business in San Rafael, California. Holiday Magic manufactures and distributes cosmetics, household products, and associated items, and operates a distribution plan involving the sale of various positions therein. This plan consists of four levels of distribution positions known, in order of ascendancy, as "Holiday girl," "organizer," "master distributor," and "general distributor." One can enter the marketing program at any of the three lower levels, depending upon one's initial investment:

(1)    At the lowest level, one can become a "Holiday girl" by

paying $11.99 for a mini-kit or $39 for a demonstration kit. For this investment one receives a purse containing cosmetic samples and various sales aids provided by the company. "Holiday girls," who make door-to-door sales, can purchase the products at 30 to 40 percent off stated retail price from Holiday Magic or from their sponsoring "organizer," "master distributor," or "general distributor."

(2)   At the second level, one can become an organizer by paying $91.41 for one full-sized sample of each item in the Holiday Magic line. In addition to being able to sell cosmetics which he has purchased at 30 to 40 percent off retail price, the organizer may recruit other "Holiday girls," organizers, or master distributors. For each master distributor he recruits he receives at least $200.

(3)   In order to become a master distributor, one must pay $3,000 to Holiday Magic. In return one receives cosmetics having a stated retail price of $5,000. A master distributor has the same rights as an organizer. Additionally, he receives a 55 percent discount off the stated retail price of cosmetics he handles, which, by the way, he must purchase from Holiday Magic.

(4)   The position of general distributor differs from the other three in that one cannot enter the marketing program at that point. In order to become a general distributor one must first be a master distributor, one must take a company-approved training course, one must pay an additional $3,000 which is received by the supervising general distributor, and one must recruit another master distributor to replace oneself in the supervising general distributor's organization. When a master distributor becomes a general distributor he takes with him other people that he has recruited and continues to have the right to recruit others, receiving $500 each time he recruits a new master distributor. He also receives $3,300 when any of his master distributors becomes a general distributor ($3,000 from the former master distributor and $300 commission on the products his

replacement master distributor buys to become a master distributor).

1. The statute, Minn. St. 325.79, subd. 2(2)(a), provides:

"With respect to any sale or lease, it shall be illegal for any seller or lessor to operate or attempt to operate any plans or operations for the disposal or distribution of property or franchise or both whereby a participant gives or agrees to give a valuable consideration for the chance to receive something of value for inducing one or more additional persons to give a valuable consideration in order to participate in the plan or operation, or for the chance to receive something of value when a person induced by the participant induces a new participant to give such valuable consideration including such plans known as chain referrals, pyramid sales, or multi-level sales distributorships."

In contending that the statute is impermissibly overbroad in violation of due process, defendants rely heavily on the so-called less-restrictive-alternative rule, which basically is that an economic regulation violates due process if a less restrictive regulation could do the job. See, Struve, *The Less-Restrictive-Alternative Principle and Economic Due Process*, 80 Harv. L. Rev. 1463. Defendants contend specifically that the statute is so broad that in order to prevent consumer fraud it prohibits common distribution systems, and that under the less-restrictive-alternative rule the legislature could have prevented the harm not by prohibiting these distribution systems but by simply enacting a fraud statute.

We need not decide whether the less-restrictive-alternative rule has any present validity in the area of economic regulation, because we do not think that the statute prohibits all distribution systems just for the sake of stopping consumer fraud. Rather, we interpret the statute as prohibiting, as evil in themselves, only those distribution schemes which place their primary emphasis on profits made by recruiting other participants, thereby producing a pyramiding result. Interpreted thusly, the statute is not overbroad.

2. In addition to contending that the statute is overbroad, defendants contend that the statute is vague and indefinite. In so contending, defendants concentrate on the fact that the word "chance," which is used in the statute, can mean either "luck" or "opportunity." We believe that there is no merit to this argument. When read in the context of the other words in the statute, the word "chance" is not ambiguous and clearly means "opportunity." In this respect it may be relevant to note that the legislature, which enacted the statute in response to the burgeoning growth of such schemes, modeled it after similar statutes in other states, some of which even expressly equate "chance" with "opportunity." See, e. g., Nev. Rev. St. 1973, § 598.100; N. C. G. S. (1973 Cum. Supp.) § 14-291.2.

3. Finally, defendants contend that the distribution plan in which they participated as general distributors does not violate the statute. As we have interpreted the statute, this depends upon what is the emphasis of the distribution scheme. The question is whether Holiday Magic is, on the one hand, a company which primarily sells products but also financially encourages its people to expand distribution via recruiting or, on the other hand, a company primarily engaged in constructing a pyramid, using the sale of a product as a front for its transactions. We believe that the latter is the case and that, therefore, the trial court did not err in finding defendants guilty as charged.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.