THE STATE OF OHIO, APPELLANT, *v.* BECKLEY ET AL., APPELLEES.

[Cite as State *v.* Beckley (1983), 5 Ohio St. 3d 4.]

(No. 82-593—Decided May 18, 1983.)

_____

[1] They are: Todd Simon Beckley, Michael Tyrrell Harris, James Edward Kinsey, Beverly Kae Short, Gordon Willard Short and Marianne Walton.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. James A. Meaney* and *Ms. Patricia Mell,* for appellant.

*Mr. Robert E. Cesner, Jr.,* for appellees Todd Simon Beckley, Michael Tyrrell Harris, James Edward Kinsey, Beverly Kae Short, and Gordon Willard Short.

*Messrs. Wiedemann, Wiedemann & Taube* and *Mr. Donald H. Taube,* for appellee Marianne Walton.

KEEFE, J. The issue *sub judice* is as narrow as the statute which particularly raises the question is concise. Are R.C. 1333.92 and the penalty provision therefor, R.C. 1333.99(H), constitutional? R.C. 1333.92 reads:

"No person shall propose, plan, prepare, or operate a pyramid sales plan or program."

A pyramid sales plan or program is defined in R.C. 1333.91, *quod vide.* There is no constitutional attack on this definitional section. The penalty for a violation of R.C. 1333.92 is spelled out in R.C. 1333.99(H), which provides:

"Whoever violates section 1333.92 of the Revised Code is guilty of a felony of the fourth degree if the compensation is one hundred fifty dollars or more, or if the offender has previously been convicted of an offense under

---

[2] Counsel in their briefs and otherwise in these matters before us refer to the Ohio Pyramid Sales Act as R.C. 1333.91 *et seq.* In Page's Ohio Revised Code Annotated the precise heading is "Pyramid Sales Plan or Program." Regardless, we are concerned with specific statutory sections, as herein referenced, not with all sections of the so-called Ohio Pyramid Sales Act.

section 1333.92 of the Revised Code. If the value of the compensation is less than one hundred fifty dollars, violation of this section is a misdemeanor of the first degree." (R.C. 1333.91 [B] defines "compensation" to mean money, financial benefit, or anything of value.)

We agree with the holding of the court of appeals that R.C. 1333.92 is not unconstitutionally vague. Moreover, we are in accord with the rationale expressed by the court of appeals in discounting the vagueness contention.[3]

We consider the attack upon the constitutionality of those sections of the so-called Ohio Pyramid Sales Act in these cases to be upon the face of the subject statutes. There cannot be a constitutional challenge to any set of particular facts before the trial court here because it did not have any true evidence before it. The motions to dismiss were made before there was any trial, and although those motions were accompanied by transcripts of a tape ostensibly made *sub rosa* at the "pyramid" meeting attended by these defendants-appellees, said transcripts cannot in any way be considered trial evidence. Although defense counsel flirted with the concept of the constitutionality of R.C. 1333.92 "as applied to the facts of this case," the overture was feckless. It is overwhelmingly apparent from the transcript of the proceedings held in the court of common pleas on March 11, 1981, that the motions to dismiss were strictly pretrial and counsel's evaluation of what the evidence in an actual trial of these defendants might develop was not tantamount to probative facts. Any attempt to use the transcripts of the tape recording as evidence of what transpired at the "pyramid" meeting at which the tape was made was wide of the mark.[4] In *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329 [28 O.O. 295], appeal dismissed (1944), 323 U.S. 674, we held in the following paragraphs of the syllabus:

"4. A legislative act may be unconstitutional upon its face, or it may be valid upon its face but unconstitutional because of its operative effect upon a particular state of facts.

"* * *

"6. Where an act is challenged on the ground that it is unconstitutional when applied to a particular state of facts, the burden rests upon the party making such attack to present clear and convincing evidence of a presently existing state of facts which makes the act unconstitutional and void when applied thereto.

"7. Constitutional questions will not be decided until the necessity for such decision arises upon the record before the court. (*State, ex rel. Herbert*, v. *Ferguson, Aud.*, 142 Ohio St., 496 [28 O.O. 86], approved and followed.)"

---

[3] The court of appeals in its opinion included definitions of "propose," "plan," "prepare" and "operate," and stated that these words are precisely definable and also are words commonly understood by persons of common intelligence.

[4] One aspect of the unreliability of the transcript is the complete failure to tie it in with the particular defendants. Examples of the supposed identifications in the transcript are: "Man in background speaks"; "Man #1"; "Man #6"; "Woman"; "Someone whistled"; "Someone in background"; "Other man"; "Someone"; "Two people talking at once."

In this matter we do not have any presently existing state of facts to which to apply the challenged statutes. Thus we reiterate that the matter before us is a challenge to the facial constitutionality of the statutes.

Hence we reach the issue of whether R.C. 1333.92 considered together with its penalty provision, R.C. 1333.99(H), is unconstitutionally overbroad. Resolution of whether a criminal statute is unconstitutional because of facial overbreadth is a touchy determination largely because of the general rule endorsed in *Belden* v. *Union Central Life Ins. Co., supra,* that where an enactment is questioned on the ground that it is unconstitutionally overbroad it is extremely difficult to find unconstitutionality absent a particular state of facts to which the challenged statute may be applied. To find that a statute is facially overbroad — distinguishable from an ascertainment of vagueness — in effect is to hold that under no reasonable set of circumstances could any person lawfully be prosecuted thereunder. It is difficult to so hold especially in view of the strong presumption in favor of the constitutionality of legislation and the judicial obligation which exists to support the enactment of a lawmaking body if this can be done. *Toledo* v. *Kohlhofer* (1954), 96 Ohio App. 355 [54 O.O. 360]; 16 Ohio Jurisprudence 3d 292, Constitutional Law, Section 160, citing many other Ohio authorities in support of these axiomatic precepts.

In *State* v. *Young* (1980), 62 Ohio St. 2d 370 [16 O.O.3d 416], this court held R.C. 2923.04 (Ohio's organized crime statute) unconstitutionally void on the limited ground of vagueness with three members of the court dissenting, one of whom was Justice Locher. In his dissenting opinion he discussed in some detail the subject of whether a statute is overbroad in its scope and thus unconstitutional, a theme not directly expounded in the *Young* majority opinion. In other words, the differences of viewpoint which existed between the majority and dissenting opinions did not center on the concept of overbreadth. The following apposite language is from Justice Locher's opinion, at page 390:

"II.

"Appellees further assert that the statute in the instant cause is overbroad in its scope. The overbreadth doctrine may not appropriately be invoked here in this manner.

"The United States Supreme Court, in discussing the overbreadth doctrine in *Broadrick* v. *Oklahoma* (1973), 413 U.S. 601, stated, at pages 610-613:

" 'Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. * * * A closely related principle is that constitutional rights are personal and may not be asserted vicariously. * * *

" 'In the past, the Court has recognized some limited exceptions to these

principles, but only because of the most "weighty countervailing policies." * * * Another exception has been carved out in the area of the First Amendment.

"'* * *

"'* * * .Application of the overbreadth doctrine in this manner is manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. *Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.* * * *' (Emphasis added.)"

There is no need for a limiting construction on R.C. 1333.92 because when it is construed with its penalty provision in R.C. 1333.99(H), as it must be, the sole impetus of R.C. 1333.92 is not directed at arguably innocent deviations from the law, as fantasized by appellees, but at overt participation in a pyramid sales plan in which compensation is a *sine qua non* component of commission of the crime. R.C. 1333.99(H) clearly requires proof of the element of compensation, more or less than one hundred and fifty dollars; otherwise, there is no crime committed. Before an indictment under the involved sections of the Pyramid Sales Act can result in a conviction, there must be some movement or act toward the execution of a pyramid sales plan or scheme. The determination of whether and when such a movement or act has been performed can only be made by the trier of fact. It is not, however, a question of the facial constitutionality of the subject statutes.

The following is enunciated in a well-reasoned opinion in *State* v. *Williams* (1952), 94 Ohio App. 249, 257 [51 O.O. 414]:

"'* * * It is well settled also that where, by the terms of a statute, several classes of persons are apparently included within its operation, and, as to some of them, its enforcement would render the act unconstitutional, and as to others not, the act will not for that reason be declared unconstitutional, but it will be presumed that the legislative intent was to apply the statute to the latter class only. *Hirn* v. *State,* 1 Ohio St., 15; *State, ex rel.,* v. *Frame, Auditor,* 39 Ohio St., 399; *Anderson* v. *Brewster,* 44 Ohio St., 576, 9 N.E., 683; *State* v. *Rouch,* 47 Ohio St., 478, 484, 25 N.E., 59.

"Furthermore, the construction of a statute depends upon its operation and effect, and not upon the form which it may be made to assume. *Butzman* v. *Whitbeck,* 42 Ohio St., 223; *Hill* v. *Micham,* 116 Ohio St., 549, 157 N.E., 13."

In *State* v. *Solem* (1974), 301 Minn. 282, 222 N.W. 2d 98, the Supreme Court of Minnesota upheld the criminal convictions of two persons for operating a pyramid sales scheme over allegations that Minn. St. 325.79, subd. 2(2)(a), was unconstitutionally overbroad. The statute forbids any person "to operate or attempt to operate * * * plans known as * * * pyramid sales, or multi-level sales distributorships."[5] The Minnesota Supreme Court, at page 285, wrote in part:

---

[5] Minn. St. 325.79, subd. 2(2)(a), provides:

"With respect to any sale or lease, it shall be illegal for any seller or lessor to operate or at-

"* * * Rather, we interpret the statute as prohibiting, as evil in themselves, only those distribution schemes which place their primary emphasis on profits made by recruiting other participants, thereby producing a pyramiding result. Interpreted thusly, the statute is not overbroad."

The Minnesota Supreme Court was in a much more advantageous position than we are since it was reviewing convictions (of operating pyramid type distributorships) which included particular fact patterns. We, on the other hand, have before us no fact scenario to which to apply the challenged sections of Ohio's Pyramid Sales Act because the trial court mistakenly ruled them facially unconstitutional with no evidence presented. Incidentally, the Minnesota court in passing noted, at page 286, "the burgeoning growth of such [pyramid] schemes" is nationwide.

Appellees further assert that R.C. 1333.92 and 1333.99(H) are unconstitutional as applied to them because such application may infringe upon their rights of free expression and assembly contra the First Amendment to the United States Constitution. We find that these sections do not abridge appellees' First Amendment rights or freedoms. The Wisconsin Supreme Court discussed the same issue in *HM Distributors of Milwaukee, Inc.* v. *Dept. of Agriculture* (1972), 55 Wisc. 2d 261, 198 N.W. 2d 598, at pages 272-273, as the following quoted language indicates. The Wisconsin court resolved it in a way with which we are in accord:

"Nor can the proposition that a con man has a constitutional right to defraud the public so long as he reveals the details of his scheme to the victim be based on the claim that the First Amendment right of freedom of speech is invaded by regulating or prohibiting unfair trade practices or false and misleading advertising of a product or economic opportunity. The United States Supreme Court has held that the constitutional protection afforded free speech does not apply to commercial advertising, and we find entirely and obviously correct the federal appeals court holding that the nonapplicability extends to the promoting of products. The role of the 'spieler' in inducing prospective purchasers to invest their money is not to be underestimated. Whether the proposition is a chance in a carnival shell game or buying a piece of real estate or a share of stock in a legitimate business enterprise, the selling of it involves speaking or writing, almost always * * *. The right to regulate or prohibit derives from the unfairness of what is done and the scheme is not saved by the sales pitch that accompanies it." (Footnotes omitted.)

Furthermore, concerning appellees' remonstration against the statutory

---

tempt to operate any plans or operations for the disposal or distribution of property or franchise or both whereby a participant gives or agrees to give a valuable consideration for the chance to receive something of value for inducing one or more additional persons to give a valuable consideration in order to participate in the plan or operation, or for the chance to receive something of value when a person induced by the participant induces a new participant to give such valuable consideration including such plans known as chain referrals, pyramid sales, or multilevel sales distributorships."

sections before us for review as invading First Amendment rights of freedom of speech and assembly, we have examined *Bates* v. *State Bar of Arizona* (1977), 433 U.S. 350. The Supreme Court, at page 380, refers with approbation to the traditional rule that a person may not challenge a statute on the ground that it *might* be applied unconstitutionally in circumstances other than those before the court. The Supreme Court goes on to explain that in the First Amendment context, the court has permitted attacks on overly broad statutes without requiring that the person making the attack demonstrate that in fact his specific conduct was protected. That, of course, is the approach the appellees make here vis-a-vis First Amendment protections. However, the Supreme Court checks the First Amendment overbreadth doctrine when it comes to commercial speech. In *Bates,* the Supreme Court, at pages 380-381, wrote the following:

"* * * [T]he justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. As was acknowledged in *Virginia Pharmacy Board* v. *Virginia Consumer Council,* 425 U.S., at 771, n. 24, there are 'commonsense differences' between commercial speech and other varieties. See also *id.,* at 775-781 (concurring opinion)."

Although *Bates* primarily involved advertising, the impact of that decision prohibits overbreadth challenges in other commercial speech contexts such as the matter *sub judice.* It is clear from R.C. 1333.91 (the definitional section), R.C. 1333.92 (the prohibition section), and R.C. 1333.99(H) (the penalty section including specific reference to compensation) that we are here in a commercial speech context.

For the foregoing reasons, we hold constitutional R.C. 1333.92 and the penalty section therefor, R.C. 1333.99(H).[6]

The judgment of the court of appeals is affirmed in part insofar as that court's decision held that R.C. 1333.92 is not unconstitutionally vague, and

---

[6] The court of appeals to a very restricted extent became involved in the concept of scienter concerning prosecution for a violation of R.C. 1333.92. The court of appeals had little comment on the subject, stating only:

"However, the statute includes and proscribes proposing, planning and preparing as well as operating a pyramid sales plan or program without any standard or degree of scienter."

We believe that before a conviction could be had under the sections of the Pyramid Sales Act some degree of knowledge and general intent must be established, although R.C. 1333.92 fails to include an element of *specific* intent. A conviction would seem to require proof of some knowledge about pyramids as well as a general intent by the defendant or defendants to participate in a pyramid type sales plan or scheme; but it is upon trial that such has to be shown. *Holt* v. *State* (1923), 107 Ohio St. 307; *State* v. *Lisbon Sales Book Co.* (1964), 176 Ohio St. 482 [27 O.O.2d 443]. Here there was no trial or remonstration with the sufficiency of the indictments. The court of appeals' consideration of scienter, as meager as it was, was premature. The presence or absence of knowledge or intent had nothing to do with the facial constitutionality of R.C. 1333.92. We reserve for another day, if and when the issues are directly presented to us, a determination of exactly what scienter and what degree of intent are necessary for a proper charge and lawful conviction under R.C. 1333.92. See *Morissette* v. *United States* (1952), 342 U.S. 246.

the judgment is otherwise reversed and the causes remanded to the court of common pleas for further proceedings according to law.

*Judgment accordingly.*

LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., and SWEENEY, J., dissent.

KEEFE, J., of the First Appellate District, sitting for W. BROWN, J.

CELEBREZZE, C.J., dissenting. The majority opinion concludes that R.C. 1333.92 is constitutional when read in conjunction with R.C. 1333.99(H). Because pyramid sales schemes can be vicious and dupe many unsuspecting victims, I empathize with the desire to prohibit this activity. However, I write separately to express my concern about the statutory language in the relevant section of the Ohio Pyramid Sales Act.

R.C. 1333.92 merely states that:

"No person shall propose, plan, prepare, or operate a pyramid sales plan or program."

The language of this section is markedly different from the Minnesota statute relied upon by the majority. Minn. St. 325.79, subd. 2(2)(a) forbids any person "to operate or attempt to operate" a pyramid sales plan. Clearly, the prohibited conduct in Minnesota is limited to operating a plan. However, three of the four operative words in R.C. 1333.92 are "propose," "plan" and "prepare." These concern activities preliminary to implementing acts to operate such a scheme. Therefore, a person could be guilty of a violation without any overt act or intent to implement a pyramid sales plan. This could mean that many persons who fantasize easy ways to get rich quick could be found guilty of violating this section. Moreover, the broad reach of the terms "propose," "plan" and "prepare" is not limited by a requirement of *mens rea.* The section does not specify any requirement of scienter.

The majority opinion recognizes that preliminary thinking and planning should not be prosecuted. It states that "[b]efore an indictment under the involved sections of the Pyramid Sales Act can result in a conviction, there must be some movement or act toward the execution of a pyramid sales plan or scheme."

Appellees argue that this section is unconstitutionally overbroad because it may be violated by innocent thoughts and conduct. In *State* v. *Phipps* (1979), 58 Ohio St. 2d 271 [12 O.O.3d 273], this court discussed the standard for determining whether a statute is overbroad as given in *Grayned* v. *Rockford* (1972), 408 U.S. 104. The United States Supreme Court stated, at 114, that "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." Following the rationale in *Phipps,* unless R.C. 1333.92, on its face, proscribes only unprotected conduct or can be narrowly construed to do so, it must be struck down as being unconstitutionally overbroad.

When the court of appeals construed the statute, it found that a person could be guilty of a violation when he merely contemplated a money-making scheme, in the privacy of his home, but had no intent of pursuing it or involving anyone else. Similarly, the appellate court concluded that persons who discuss the possibilities of a pyramid sales plan might be found guilty even though they had no intent to implement it.

In construing the language of a statute, to sustain its validity, "it must be recognized that a court, in interpreting a legislative enactment, may not simply rewrite it * * *." *Seeley* v. *Expert, Inc.* (1971), 26 Ohio St. 2d 61, 71 [55 O.O.2d 120]. See, also, *Crane* v. *Cedar Rapids & I.C. Ry. Co.* (1969), 395 U.S. 164, 167. In *State* v. *Young* (1980), 62 Ohio St. 2d 370 [16 O.O.3d 416], we rejected this approach in dealing with R.C. 2923.04. We stated, at 382, that "[t]he objective of the legislation cannot be questioned, but its sweeping reach and its imprecise terminology are incompatible with due process requirements. These constitutional considerations may not be dismissed merely because there is a laudatory legislative end sought to be achieved." Similarly, although R.C. 1333.92 has a worthy purpose, its sweep is too broad. A limiting construction necessary to save this section would require major rewriting, a task we cannot perform.

Therefore, I conclude that R.C. 1333.92 was inartfully drafted and is unconstitutionally overbroad. For these reasons, I dissent and would affirm the court of appeals.

SWEENEY, J., concurs in the foregoing dissenting opinion.