[Cite as *Hunt v. Dixon*, 2020-Ohio-4164.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Jenifer Hunt

Appellant

Court of Appeals No. L-19-1078

Trial Court No. CVI-1800192

v.

Michael Dixon

Appellee

and

Jenifer Hunt

Appellant

Court of Appeals No. L-19-1079

Trial Court No. CVI-1800193

v.

T & J Excavating & Tree Clearing

Appellee

**<u>DECISION AND JUDGMENT</u>**

Decided: August 21, 2020

* * * * *

Jenifer Hunt, pro se.

Richard A. Chase, for appellee.

* * * * *

**MAYLE, J.**

## Introduction

{¶ 1} These consolidated appeals involve two separate cases that were filed by the plaintiff, Jenifer Hunt, in the Small Claims Division of Sylvania Municipal Court, seeking identical damages for the "illegal removal of trees on [her] property": case No. CVI-1800192 against her neighbor, Michael Dixon, and case No. CVI-1800193 against the tree removal company that Dixon hired, T & J Excavating and Tree Clearing ("T & J"). The two cases were combined for hearing on February 8, 2019. In a written judgment dated March 5, 2019, the trial court dismissed the case against T & J without comment, and entered judgment in plaintiff's favor against Dixon in the sum of $500 plus costs and statutory interest.

{¶ 2} For the following reasons, we affirm, in part, and reverse, in part, the March 5, 2019 judgment of the trial court.

## Background

{¶ 3} Based upon our review of the transcript, the precise timeline in this case is unclear. As best we can, we present the parties' respective version of events.

{¶ 4} Plaintiff and Dixon own adjoining lots along Nebraska Avenue in Lucas County. The lots are each about four and one-half acres deep and were described as "bowling alley-shaped." Plaintiff lives in her home with her wife, Skeeter Hunt ("Skeeter"). Plaintiff relied almost exclusively on Skeeter's testimony at trial. Although

2.

Skeeter has no ownership interest in plaintiff's property, her authority to act on plaintiff's behalf was not at issue.

{¶ 5} Dixon purchased his lot with the intention of building a home on it. In preparation for that, Dixon hired T & J to clear-cut trees from his "completely timbered" lot. Despite having the property surveyed and marked, Dixon testified that it was still "hard to tell" where the property lines were.

{¶ 6} Skeeter testified that she "is terrible with exact dates," but the record suggests that in mid-July of 2018, she learned from her other neighbor, Mark Takacs, that "the new neighbor [Dixon] [was] taking trees off of [her] property." When she and Takacs investigated, they found that "approximately [a] dozen trees of different sizes" had been removed from plaintiff's property and that additional trees had been marked for removal. She discovered that the trees were removed from the back of plaintiff's lot, which is not visible from plaintiff's house.

{¶ 7} According to Dixon, in the initial phase of tree removal, he instructed T & J's owner, Tom Anderson, Jr., to remove only those trees that were clearly on Dixon's property and "to wait" on those trees that were "on the [shared] property line." On July 24, 2018, Dixon went to plaintiff's home and spoke with Skeeter, whom he assumed was also an owner. Dixon testified that he asked Skeeter for permission to cut down "several trees" that were either on her property or on the line separating the two properties. Dixon told Skeeter that the "trees in question had marks on them so she would know which ones." Dixon claims that Skeeter told him that "she didn't care" if he

3.

cut down the trees "because she didn't go back there." After securing Skeeter's approval, Dixon contacted Anderson and said, "neighbor said, okay on these trees." Anderson then instructed his T & J crew to cut them down.

{¶ 8} Skeeter's recollection of that conversation is a bit different. She remembered meeting Dixon at her home, although not the date. She insisted that, by then, the harm to plaintiff's property had already occurred. That is, when Dixon appeared at her door "the 12 trees [had already] been taken down." Moreover, according to Skeeter, Dixon asked for permission to remove "one more tree down at the very, very back of the property," not several trees as he claimed. Despite being in "total shock," by the request, she told Dixon that he "could take that other tree down" in an effort to be a "good neighbor." Skeeter stated that she did not know whether it was ever removed.

{¶ 9} The next day, July 25, 2018, Skeeter and Takacs heard the sound of a buzz saw and found two T & J employees preparing to remove additional trees from plaintiff's property. According to Skeeter, the employees told her that they "had no idea why they were cutting them down because they knew [the trees] were not on Mr. Dixon's property." Skeeter instructed them not to remove any trees from plaintiff's lot, and they complied.

{¶ 10} T & J's owner, Tom Anderson, testified that his employees contacted him after their exchange with Skeeter, and told him that Skeeter had "okayed" the removal of the trees "on the line sharing the property" but "not the [six or seven] clearly on her property line." The record is unclear whether any more trees were removed.

4.

{¶ 11} That same day, still July 25, 2018, Skeeter "ended up * * * calling the sheriff out due to cutting" because she had researched the issue "on line" and was "quite upset about the trees." Later, a deputy sheriff, the plaintiff, Skeeter and Takacs met with Dixon and Anderson at the site. Skeeter and Dixon argued over the number of trees she had authorized for removal. But, by all accounts, the parties agreed to settle the dispute then and there. No police report was filed.

{¶ 12} According to Skeeter, Dixon promised to "write up a contract stating that he would replace trees [along] the entire property line to give us back our privacy and reimburse [Skeeter and plaintiff] 500 bucks for the damage."

{¶ 13} Dixon testified that the group counted the number of trees that had been cut down and that there were "only six to seven trees," and "half of [those] were on the property line." Dixon asked "what can we do to settle it? * * * And she said $500. $500 will settle this matter." The record is unclear whether Dixon was referring to plaintiff or Skeeter, but upon questioning by the court, the plaintiff agreed that "th[ere] was a verbal agreement."

{¶ 14} Dixon wanted the agreement in writing because "[Skeeter's] story [had] changed." Therefore, "[t]owards the end of July," Dixon asked his lawyer to "write up something." On August 2 or 3, 2018, Dixon claims that he went over to the plaintiff's home "to let her know I was getting things written up" but no one was home. At trial, the court accepted from Dixon an unsigned, draft release setting forth the terms of the

5.

parties' agreement. Dixon admitted, however, that the draft release was never presented to the plaintiff or Skeeter for their approval.

{¶ 15} Meanwhile, in the weeks after reaching an agreement, Skeeter "[got her] composure back." She also researched the value of the trees that had been removed. Based upon her research, each of the 12 trees, was worth, at a minimum, $1,500, for a total estimated loss of $18,000.

{¶ 16} On August 21, 2018, having "still not heard a single word from Mr. Dixon," plaintiff filed complaints against Dixon and T & J, seeking $6,000 as to each defendant, for their "illegal removal of trees on [her] property." (Sylvania Municipal Court case Nos. CVI-1800192 and CVI-1800193, respectively).

{¶ 17} Ultimately, the court ruled as follows:

Plaintiff Jenifer Hunt is the fee owner of her property and is the real party in interest in her cause of action against Defendants. As such, she verbally authorized the cutting of marked trees and further, she made an oral agreement to accept $500.00 as compensation for trees cut on her property, which agreement also included the planting of some buffer trees. The Court notes that Defendant Dixon caused some [arborvitae] trees to be planted.

Witness Skeeter Hunt, Plaintiff's partner in marriage, has no standing to seek damages by reason of any alleged negligence or wrongdoing on the part of Defendants, as said witness has no fee interest in Plaintiff's property.

6.

It is the finding of the Court that Plaintiff Jenifer Hunt entered into an oral agreement with Defendant Dixon authorizing and/or condoning the removal of certain trees on her property in exchange for $500.00 compensation and the planting of some buffer trees by Defendant Dixon.

{¶ 18} Based upon its factual findings, the court enforced the agreement between the plaintiff and Dixon, ordering Dixon to pay plaintiff $500, plus costs and interest. The court dismissed the case against T & J, without comment. Plaintiff appealed, pro se, and raises a single assignment of error for our review:

Appellant's Assignment of Error: The trial judge's ruling for Michael Dixon on March 5, 2019 was not based on the evidence and testimony presented in court. The case against T & J Excavating, a licensed professional tree removal company in business over 20 years, knew what they were doing was illegal, but did it anyway. Their actions were not addressed at the trial held on February 8, 2019, nor where they held responsible for breaking the law, Ohio Revised Code 901.51. Transcript p. 16 & 23.

**Law and Analysis**

{¶ 19} We review small claims court proceedings under an abuse-of-discretion standard. *Broadstock v. Elmwood at the Springs*, 6th Dist. Sandusky No. S-12-021, 2013-Ohio-969, ¶ 6. An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d

7.

217, 219, 450 N.E.2d 1140 (1983).  In other words, the reviewing court must find that there "is no sound reasoning process that would support that decision."  *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 20} In this case, plaintiff claims that the trial court's decision is "full of errors." We address each of plaintiff's arguments below.

### 1.  Case No. CVI-1800193 against T & J

{¶ 21} Plaintiff makes two arguments relating to her case against T & J:  (1) she argues that her case against T & J was not addressed at the February 8, 2019 hearing because no testimony or evidence was offered regarding that case, and (2) she argues that the trial court erred in failing to hold T & J "responsible for breaking the law [under] R.C. 901.51."

{¶ 22} First, the record clearly establishes that the court heard both cases during the combined hearing:  the trial court issued notices of the February 8, 2019 hearing in both cases; the trial court frequently referred to "the defendants" (i.e., T & J and Dixon) throughout the hearing; T & J's owner, Tom Anderson, testified at the hearing; and the plaintiff and Anderson both offered evidence at the hearing.  We therefore cannot conclude that the case against T & J was not heard at the February 8, 2019 hearing.

{¶ 23} Second, regarding the merits of her case against T & J, plaintiff claims that the trial court erred in failing to hold T & J "responsible for breaking the law [under] R.C. 901.51."  R.C. 901.51 is a criminal statute, specifically, a fourth-degree

8.

misdemeanor, but it also provides for a civil remedy. It provides, in part, that "[n]o person, without privilege to do so, shall recklessly cut down * * * [a] tree * * * standing or growing on the land of another. * * * [W]hoever violates this section is liable in treble damages for the injury caused." *Id.*; R.C. 901.99. "[T]he statute was enacted by the General Assembly to create a new and independent right to civil treble damages for any violation of that statute." *Wooten v. Knisley*, 79 Ohio St.3d 282, 288, 680 N.E.2d 1245 (1997).

{¶ 24} At trial, when the plaintiff requested that the court enforce R.C. 901.51 against both defendants, the court advised her that this was a civil, not a criminal, proceeding. Indeed, the small claims court has no jurisdiction over criminal cases, and the plaintiff concedes that she did not pursue a criminal case against either defendant. However, a civil damages claim under R.C. 901.51 is not dependent upon a criminal conviction. *Wooten* at syllabus ("A criminal conviction, resulting from a violation of R.C. 901.51, is not a condition precedent to an award of treble damages in a civil cause of action * * *."). In other words, the absence of a criminal conviction in this case did not foreclose the plaintiff from pursuing a claim against T & J for civil treble damages under R.C. 901.51.

{¶ 25} In her complaint against T & J, plaintiff demanded $6,000 for the "illegal removal of trees on my property." At trial, plaintiff argued that T & J violated R.C. 901.51, and she offered a copy of the statute as an exhibit. In support, she presented evidence that, if believed, established that T & J removed 12 trees from her property, and

9.

should have provided the trial court, as factfinder, with sufficient evidence to determine whether or not such removal was done "recklessly" and "without privilege." For unknown reasons, however, the trial court did not make any findings with respect to plaintiff's claim against T & J or enter judgment on the merits for either party. Rather, the trial court simply "dismiss[ed] Plaintiff's cause of action against T & J Excavating & Tree Clearing" without any explanation.

{¶ 26} We cannot glean any basis for the trial court's dismissal of plaintiff's complaint against T & J, and there is no reason that we can discern that would justify an outright dismissal of plaintiff's complaint rather than a ruling on the merits. Based on the trial court's comments at the hearing, it is possible that the trial court dismissed the complaint against T & J based on the mistaken belief that it lacked authority to hear a civil suit for an alleged violation of R.C. 901.51. Regardless of the trial court's reasons for the dismissal, we find that the trial court abused its discretion in failing to make a ruling on the merits of plaintiff's claim against T & J.

{¶ 27} We therefore reverse and remand case No. CVI-1800193 against T & J so that the trial court may determine whether T & J cut down the plaintiff's trees "recklessly"[1] and "without privilege" in violation of R.C. 901.51. If, on remand, the trial

---

[1] The term "recklessly," as it is used in R.C. 901.51, is defined in R.C. 2901.22(C), which provides that:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person

court determines that T & J's conduct violated R.C. 901.51, any damages awarded are to be trebled by the trial court pursuant to R.C. 901.51, subject to the $6,000 monetary jurisdiction limit set for claims brought in the small claims division.  *See* R.C. 1925.02(A)(1). *See Wooten*, 79 Ohio St.3d at 289-290, 680 N.E.2d 1245.

### 2.  Case No. CVI-1800192 against Dixon

{¶ 28} Regarding plaintiff's case against Dixon, we note at the outset that plaintiff does not challenge the trial court's finding that she "made an oral agreement [with Dixon] to accept $500.00 as compensation for trees cut on her property, which agreement also included the planting of some buffer trees."  And, that finding is supported by the record, as established by the following exchange between the court and the plaintiff:

THE COURT:  Was there a hand shake?

MS. J. HUNT:  Yes.

THE COURT:  Was there a verbal agreement?

MS. J. HUNT:  Th[ere] was a verbal agreement.

THE COURT:  Did you agree to that verbal agreement?

MS. J. HUNT:  Yes.

THE COURT:  Thank you.

---

is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

11.

MS. J. HUNT: And then there was nothing after that, which is when why we filed the small claims.

{¶ 29} The issue before the court was whether that oral agreement constituted a valid and enforceable release.

A release, or compromise agreement, is a particular kind of contract, and, like other contracts, requires a definite offer and an acceptance thereof. * * * A release must be the result of a meeting of the parties' minds in order to be binding. * * * While this court has previously recognized that an oral settlement agreement requires no more formality and not greater particularity than appears in the law for the formation of a binding contract, * * * neither can less formality and less particularity be countenanced when an oral release is brought before the court for enforcement. The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." (Citations omitted.) *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982).

{¶ 30} Our examination of the record and the facts surrounding the purported oral release between plaintiff and Dixon leads us to the conclusion that a meeting of the minds occurred in this case.

{¶ 31} In plaintiff's own words, there was a "verbal agreement" that Dixon would pay "$500 restitution and plant[] privacy trees along the property line." While plaintiff

12.

claims that the oral agreement was "contingent on a written agreement to be developed by Mr. Dixon," and that Dixon was "specifically" given "a week or two" to prepare the contract, the trial court rejected those arguments. Instead, it credited Dixon, who testified that there were no contingencies and "no timetable." "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its own judgment for that of the finder of fact." *Doe v. Vineyard Columbus*, 10th Dist. Franklin No. 13AP-599, 2014-Ohio-2617, ¶ 24.

{¶ 32} Although plaintiff claims that Dixon "dropp[ed]" the oral agreement "into a blackhole," all of the evidence presented at trial, including the testimony of plaintiff's own witnesses, establishes that Dixon fulfilled part of the agreement by "caus[ing] some [arborvitaes] to be planted." And, as noted by the trial court, the plaintiff's failure to inquire as to the whereabouts of the $500 payment did not make the parties' agreement any less enforceable.

{¶ 33} In short, we find that the trial court did not abuse its discretion when it concluded that the parties' oral agreement—which required Dixon to pay $500 to the plaintiff and plant replacement trees along the plaintiff's property line—was a valid settlement of the dispute between plaintiff and Dixon regarding the removal of plaintiff's trees.

{¶ 34} Finally, plaintiff makes three other arguments regarding the trial court's factual findings relating to her claim against Dixon, which we briefly address below.

13.

{¶ 35} First, plaintiff complains that the trial court observed in its decision that Skeeter estimated that the total value of the felled trees was "approximately * * $18,000" because, according to plaintiff, "[t]his is not what was said." But, at trial, Skeeter testified that every tree was worth, "at least" $1,500, and therefore, the combined value of the 12 trees "would have been worth $18,000." Skeeter further remarked that it was "incredibly reasonable" for plaintiff to limit the claim to "one third of what the trees were worth," i.e., $6,000. While Skeeter "guess[ed]" that the total loss was "more like $40,000" during redirect examination, the plaintiff proffered no evidence to support that figure. We therefore reject this argument.

{¶ 36} Second, the plaintiff challenges the trial court's finding that "Skeeter has no standing to seek damages [because she] has no fee interest in Plaintiff's property." On appeal, plaintiff asserts that Skeeter has a "great fee interest," because she "originally purchased [the property] in cash." Plaintiff did not raise this argument in the trial court, and she is barred from raising this argument for the first time on appeal. *State ex rel. Afjeh v. Ottawa Hills*, 6th Dist. Lucas No. L-03-1159, 2004-Ohio-1968, ¶ 23. Moreover, at trial, when asked who owned the property, plaintiff responded, "I do," and Skeeter confirmed that she "doesn't own the property." Finally, and perhaps most importantly, the complaints were filed in plaintiff's name only. Because Skeeter is not a party to these proceedings, she cannot be entitled to a damages award in this case.

{¶ 37} Lastly, plaintiff challenges the trial court's findings that "on July 24, 2018, [Dixon] met with Plaintiff and Skeeter for the purpose of asking for permission to cut

14.

down several trees" and that plaintiff "verbally authorized the cutting of marked trees." (Judgment Entry at 2). We agree with the plaintiff that the transcript does not support a finding that plaintiff participated in the July 24, 2018 conversation between Dixon and Skeeter at plaintiff's home. It follows, therefore, that *the plaintiff* could not have authorized the removal of any tree(s) at that time. Any error, however, is harmless because, plaintiff alleges that her claim against Dixon and T & J had already accrued as of that day. Moreover, as to her specific claim against Dixon, the critical issue is not how many trees were authorized for removal or who authorized them, but rather whether the plaintiff agreed to release Dixon from harm arising from his unauthorized removal of trees from her property if he paid her $500 and planted some replacement trees. And, as stated above, the trial court did not abuse its discretion when it concluded that the parties reached an oral agreement whereby Dixon would compensate plaintiff for the removal of the trees.

**Conclusion**

{¶ 38} For all these reasons, we find the sole assignment of error to be well-taken, in part, and not well-taken, in part.

{¶ 39} We reverse that portion of the March 5, 2019 judgment that dismissed case No. CVI-1800193 against T & J, and remand that case to the trial court. On remand, the trial court is instructed to determine whether T & J violated R.C. 901.51 through the "illegal removal of trees on [plaintiff's] property" as defined by that statute. If, on remand, the trial court determines that T & J violated R.C. 901.51, any damages are to be

15.

trebled by the trial court pursuant to R.C. 901.51, subject to the $6,000 monetary jurisdiction limit set for claims brought in the small claims division.

{¶ 40} We affirm that portion of the March 5, 2019 judgment that enforced the agreement between plaintiff and Dixon and granted judgment to plaintiff in case No. CVI-1800192 in the sum of $500 plus costs and interest.

{¶ 41} Pursuant to App.R. 24, the plaintiff and T & J are ordered to pay the costs of this appeal in equal measure.

Judgment reversed, in part,<br>and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.