PERKINS, APPELLANT, *v.* HATTERY, DOG WARDEN, APPELLEE.

(No. 448—Decided June 3, 1958.)

Mr. *Charles Lease,* Mr. *Joseph B. Quatman* and Mr. *James C. Blair,* for appellant.
Mr. *Paul N. McKinley,* for appellee.

*Per Curiam.* This appeal on questions of law and fact is from the judgment in an action in the Court of Common Pleas by the owner of a licensed dog to enjoin the duly appointed county dog warden from killing, destroying, or otherwise disposing of, the dog. The cause was tried *de novo* in this court on the transcript of evidence adduced in the court below.

It is either admitted or undisputed that the defendant is a duly appointed county dog warden, that the dog is a licensed dog owned by the plaintiff, that the dog was seized on its owner's premises by defendant dog warden approximately nine hours after certain sheep were killed on other premises, and that complaint of such killing had been made by the owner of the sheep to the warden. It is disputed that the dog in question was the dog which killed the sheep. It appears that if not enjoined defendant county dog warden will kill, destroy, or otherwise dispose of, plaintiff's dog.

On the undisputed facts the sole question necessary for this court to decide is whether or not the laws of Ohio permit a duly appointed county dog warden to seize and kill, destroy, or otherwise dispose of, a duly licensed dog found and seized by the warden on the premises of its owner following a complaint made to the warden by the owner of sheep that the dog had killed certain of his sheep approximately nine hours before such seizure.

The position of county dog warden is a creature of statute and in his official capacity he has only such powers as are provided by statute. An examination of the statutes of Ohio reveals that, in the absence of a rabies quarantine as provided in Section 955.26, Revised Code, a county dog warden is not specifically given any authority, in such capacity, to seize and kill, destroy, or otherwise dispose of, any dogs except unlicensed dogs. The apparent authority given the warden by Section 955.29, Revised Code, to "fix the responsibility" for loss or in-

jury claimed by an owner of livestock cannot be construed to give the warden any authority to seize and kill, destroy, or otherwise dispose of, the dog which he determines to be responsible. His fixing of responsibility is merely to assist the proper authorities in their determination of the propriety of a claim for the loss. His decision is not in any sense final, is subject to the determination of the board of township trustees on its hearing of the claim for the loss, and to a review of such determination by the board of county commissioners.

Although the first paragraph of Section 955.12, Revised Code, provides that "The board of county commissioners shall appoint or employ a county dog warden * * * to enforce Sections 955.01 to 955.27, inclusive, and 955.29 to 955.38, inclusive, of the Revised Code," such section, in its present form, is a part of the recodification of the former General Code by legislative act effective October 1, 1953. As another part of the same act, Section 1.24, Revised Code, was adopted and provides:

"That in enacting this act it is the intent of the General Assembly not to change the law as heretofore expressed by the section or sections of the General Code in effect on the date of enactment of this act. The provisions of the Revised Code relating to the corresponding section or sections of the General Code shall be construed as restatements of and substituted in a continuing way for applicable existing statutory provisions, and not as new enactments."

It necessarily follows that to determine the meaning of the first paragraph of Section 955.12, Revised Code, reference must be had to the first paragraph of Section 5652-7, General Code, in effect at the time of the adoption of the Revised Code and analogous to Section 955.12, Revised Code, and which provided as follows:

"County commissioners shall appoint or employ a county dog warden * * * to enforce the provisions of the General Code relative to the licensing of dogs, *the impounding and destruction of unlicensed dogs,* and the payment of compensation for damages to live stock inflicted by dogs." (Emphasis added.)

It is readily apparent that the legislative intent is that a county dog warden, as such, shall have no authority, express or implied, to impound and kill, destroy, or otherwise dispose of,

licensed dogs. This intent is even more apparent when it is noted that in Section 955.12, Revised Code, as it now exists, Section 955.28, Revised Code, hereinafter discussed, is excluded both from those statutory sections which a county dog warden is to enforce and from those statutory sections said to prescribe his duties.

Nor does the provision of Section 955.12 that county dog wardens "shall have the same police powers as are conferred upon sheriffs and police officers *in the performance of their duties* as prescribed by Sections 955.01 to 955.27, inclusive, and 955.29 to 955.38, inclusive," enlarge the wardens' powers in this respect for they have no duty to perform as wardens to impound or destroy licensed dogs.

Having no duty or right in his official capacity, does a county dog warden have a duty or right in any other capacity, and with reference to the facts of this case, to seize and kill, destroy, or otherwise dispose of, a licensed dog?

We have made a thorough search of the statutes and case law of Ohio and find only one possible source of such duty or right. That source is Section 955.28, Revised Code, which, so far as pertinent, reads as follows:

"A dog that chases, worries, injures, or kills a person, sheep, lamb, goat, kid, domestic fowl, or domestic animal except a cat or another dog can be killed at any time or place. If, in attempting to kill *such dog running at large,* a person wounds it, he is not liable to prosecution under the penal laws which punish cruelty to animals." (Emphasis added.)

The term "running at large" has been variously defined, but in the case of *Uebele* v. *State,* 21 Ohio App., 459, at page 462, 153 N. E., 215, the Court of Appeals for Mahoning County said:

"It is our opinion that a dog is at large when a vagrant, when it runs at will, when it is absolutely beyond control or call and is acting on its own initiative, and under circumstances where there is no connection, physical or sympathetic, between the dog and the master * * *."

Except when doing so at the direction of or under the control of his master, any dog that chases, worries, injures, or kills a person, sheep, lamb, goat, kid, domestic fowl or domestic animal, by such activity alone, fulfills most of the requirements of

said definition. A dog on its master's premises is not a vagrant and is generally held not to be running at large. With such holding we are in accord.

In exempting a person who injures "such dog running at large" from prosecution under the statutes which punish for cruelty to animals, the Legislature left such statutes in force and applicable to the punishment of a person for cruelty to "such dog" while not running at large. To concede that a person would have a right to injure a dog not running at large is to arrive at a conclusion that the Legislature would on the one hand permit such injury while on the other hand would punish the person responsible for the injury. Such a conclusion would be as absurd as it would be inconsistent, and it would be equally as absurd and inconsistent to permit the killing of such dog not running at large.

It is noted that the words "chases, worries, injures, or kills" are all in the present tense, indicating a legislative intent that for the killing of the dog to be permitted the dog must be killed while in the act of chasing, worrying, injuring, or killing. To hold to the contrary as the defendant claims we should, would, under the terms of the statute, and under an appropriate state of facts, permit the killing of a very valuable dog for merely chasing a very cheap chicken at a place other than where the chasing occurred and at a time long after any threat or danger to the chicken had passed. We cannot believe that the Legislature so intended.

It has been suggested, however, that the words, "at any time or place," would permit the killing of a dog at any time whatsoever and at any place whatsoever. So interpreted a dog could be killed inside his master's house at three o'clock in the morning. We do not think the Legislature could have intended that the statute should be so broad in its operation. It is a general rule of construction that statutes which permit the summary divestiture of title of a person to property must be strictly construed. 2 American Jurisprudence, 801, Animals, Section 149. Adhering to such rule we conclude that the Legislature intended to limit the operation of the words, "any time," to any time when the dog is found killing sheep and, any "place," to any place where the dog is found killing sheep. Early and cur-

rent statutes prohibit the running at large of animals in public thoroughfares and upon unenclosed land, and others require the confinement of dogs between hours of sunset and sunrise of each day. The Legislature may have conceived the use of the words "at any time or place" necessary to extend the permission for the killing of a dog to any place, whether or not it be a public thoroughfare or unenclosed land, and to any time, whether or not it be between the hours of sunset and sunrise.

It is therefore our opinion that the provisions of Section 955.28, Revised Code, do not permit a dog warden, either in his official capacity or as an individual, to seize and kill, destroy, or otherwise dispose of, a licensed dog which is not then running at large or then in the act of chasing, worrying, injuring, or killing a person, sheep, lamb, goat, kid, domestic fowl, or domestic animal, at a time some hours after such dog was alleged to have killed sheep while running at large.

As there was no evidence in this case as to the dog being seized after hot pursuit, we specifically do not decide whether a seizure after hot pursuit would alter our foregoing conclusions.

We conclude that the laws of Ohio do not permit a duly appointed county dog warden to seize and kill, destroy or otherwise dispose of a duly licensed dog found and seized by such warden upon the premises of its owner following a complaint made to the warden by the owner of sheep that the dog had killed certain of his sheep approximately nine hours before such seizure.

Having arrived at this conclusion on the undisputed facts of this case, it is not necessary for this court to determine, nor do we determine, the disputed question of whether the dog in question actually killed the sheep as claimed.

For the reasons mentioned it is the decree of this court that the defendant county dog warden be and he is hereby enjoined from killing, destroying, or otherwise disposing of, the dog owned by plaintiff described in the petition herein, and defendant is further enjoined from continuing to withhold possession of the dog from the plaintiff.

*Decree for plaintiff.*

MIDDLETON, P. J., YOUNGER and GUERNSEY, JJ., concur.