THE STATE OF OHIO *v.* ARGEA ET AL.

(Nos. 88 CRB 1747, 88 CRB 1748, 88 CRB 1750, 88 CRB 1751, 88 CRB 1752, 88 CRB 1753, 88 CRB 1754 and 88 CRB 1756—Decided April 19, 1989.)

Canton Municipal Court.

*Francis G. Forchione,* assistant prosecutor, for the state.

*Borcoman & Lindsey* and *Tom A. Borcoman,* for defendants.

HARRY E. KLIDE, J. Complaints were filed against defendants Stan Gregory and Vince Bentivegna charging them with gambling in violation of R.C. 2915.02 and operating a gambling house in violation of R.C. 2915.03. Complaints were also filed against defendant Jack Bolender and five other defendants, charging them all with gambling. The alleged misconduct took place over a period of time at AmVet Club No. 555, located at 514 Cleveland Avenue, N.W., Canton, Ohio.

The gambling charges against Bolender and the other five defendants were eventually dismissed upon motion of the state, whereas Gregory and Bentivegna entered pleas of no contest to the charge of gambling. A finding of guilty was made, and each defendant was fined $150 and given a ten-day suspended jail sentence. The charge of operating a gambling house was dismissed upon motion of the state.

A motion has been filed by defendants Gregory, Bentivegna and Bolender to return to them cash and personal property in the custody of the Canton Police Department that were seized as a result of a raid of a poker game on June 4, 1988 pursuant to a search warrant.

An evidentiary hearing was held with testimony being given by a police officer and Gregory. During the course of the hearing, it was stipulated by the parties that the chips and the playing cards used in the poker game should be forfeited and that the club's paraphernalia, such as the membership cards, books, records and assorted papers, should be returned to AmVet Club No. 555. Moreover, the state conceded that $20 belonging to Bolender should be returned to him.

The undisputed facts are that the property seized by the Canton police was pursuant to a search warrant, that during the police raid a poker game was in progress, that a rake-off was being taken out to allegedly pay for the expenses of the AmVet Club, that the game was being played with chips and that there was no money visible on the poker table. Furthermore, the police found $245 in an adjoining room and took $390 from the pockets of Gregory, $106 from the pockets of Bentivegna, both of whom were playing poker, and $20 from the pockets of Bolender, who was in an adjoining room at the time of the police raid.

The defendants contend that the money in question was theirs legally and was not in the poker pot or on the

poker table. Thus, it should be returned to the rightful owners. On the other hand, the state contends that even though it was not illegal *per se* to possess the money, it nevertheless became tainted or illegal because it was used to commit the offenses with which the defendants were charged.

Fundamentally at issue is the application and interpretation of R.C. 2933.41, which governs the disposition of property held by a law enforcement agency. This statute essentially provides that property which has been lawfully seized and which is in the custody of a law enforcement agency "shall be kept safely pending the time it no longer is needed as evidence" when it "shall be disposed of pursuant to this section" (R.C. 2933.41[A]). Pertinently, R.C. 2933.41(C) provides:

"(C) A person loses any right he may have to the possession of property if either of the following apply:

"(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and such person is a conspirator, accomplice, or offender with respect to the offense;

"(2) When a court determines that the property should be forfeited because, in light of the nature of the property *or the circumstances of such person,* it is unlawful for the person to acquire or possess the property." (Emphasis added.)

Even though R.C. 2933.41 is not a forfeiture statute, depriving the defendants' right to possession of their money is as odious as if the state had declared a forfeiture. It is well-settled that a statutory provision for a forfeiture must be strictly construed, keeping in mind the principle that forfeitures are not favored in law or equity, and that they are not to be carried, by construction, beyond the clear expression of the statutes creating those forfeitures. 50 Ohio Jurisprudence 3d (1984) 257, Forfeitures and Penalties, Section 5; *State, ex rel. Lukens,* v. *Indus. Comm.* (1944), 143 Ohio St. 609, 611, 28 O.O. 506, 507, 56 N.E. 2d 216, 217; *State, ex rel. Cline,* v. *Indus. Comm.* (1939), 136 Ohio St. 33, 35, 15 O.O. 534, 535, 23 N.E. 2d 636, 637; *State* v. *Lilliock* (1982), 70 Ohio St. 2d 23, 25-26, 24 O.O. 3d 64, 65-66, 434 N.E. 2d 723, 725. Speaking for the Ohio Supreme Court in *Lilliock,* Justice Clifford F. Brown stated:

"* * * This accords with the general principle that statutes imposing restrictions upon the use of private property, in derogation of private property rights, must be strictly construed. * * * Whenever possible, such statutes must be construed so as to avoid a forfeiture of property. * * * No forfeiture may be ordered unless the expression of the law is clear and the intent of the legislature manifest. * * *" *Id.* at 26, 24 O.O. 3d at 65-66, 434 N.E. 2d at 725. See, also, *Saunders* v. *Clark Cty. Zoning Dept.* (1981), 66 Ohio St. 2d 259, 261, 20 O.O. 3d 244, 246, 421 N.E. 2d 152, 154; *Perkins* v. *Hattery* (1958), 106 Ohio App. 361, 365, 7 O.O. 2d 100, 102-103, 155 N.E. 2d 73, 77; *State, ex rel. Jones,* v. *Bd. of Deputy State Supervisors & Inspectors of Elections* (1915), 93 Ohio St. 14, 16, 112 N.E. 136; *Lessee of Bond* v. *Swearingen* (1824), 1 Ohio 395, 404; 37 Corpus Juris Secundum (1943) 10, Forfeitures, Section 5.

A proceeding under R.C. 2933.41 is criminal in nature, but civil in form, and is governed by the Rules of Civil Procedure. *State* v. *Lilliock, supra,* paragraph two of the syllabus; *Chagrin Falls* v. *Loveman* (1986), 34 Ohio App. 3d 212, 216, 517 N.E. 2d 1005, 1009.

In a Shaker Heights Municipal Court case involving a police raid on a poker game being played in a Sheraton Motor Hotel where the defendant in the previous criminal matter had his $8 in the "pot" at the time of his arrest,

and the sum of $255 directly in front of his place at the table, which money had not been entered into play, the court found the defendant to be the rightful owner of $255 which he had not lost or which he had not yet had the opportunity to invest in the game. *Ryals* v. *Collins* (1975), 46 Ohio Misc. 25, 75 O.O. 2d 91, 345 N.E. 2d 658.

Applying the two-prong test of R.C. 2933.41(C) in light of all the cases cited to the facts of this case, the court finds and concludes that neither of the statutory requirements has been fulfilled. Other than the chips and cards used in the poker game, the record is devoid of any evidence that the confiscated cash and club paraphernalia were used in the commission of the offense, or that the nature of the money or the circumstances of any of the defendants was such as to conclude that the property in question was illegal for the defendants to possess. The cash found in the defendants' pockets was not illegal nor is there anything in the record of a personal circumstance of any of the defendants, as an example, such as unfitness to possess the money, or of a legal restriction or disability, that would convert an otherwise lawful possession into one that casts the penalty of forfeiture in either its acquisition or possession. See *Dayton* v. *Boddie* (1984), 19 Ohio App. 3d 210, 19 OBR 354, 484 N.E. 2d 171.

To allow the government to get into the pockets of its citizens when they are either playing poker or in close proximity to a poker game and then to deprive the citizens of the right to possession of their money is such a personal intrusion that can only be tolerated by strictly adhering to and complying with the underlying statutory scheme that provides for forfeiture of private property in derogation of property rights. In light of the two-part requirement of R.C. 2933.41(C), this court cannot be led astray by the argument that money in the pockets of citizens who are either playing poker or are in the proximity of a poker game is somehow contaminated or tainted and must be forfeited to the state. Such reasoning is inconsistent with the statutory scheme contemplated by R.C. 2933.41, though it appeases deep-seated human preconceptions and emotions regarding gambling and its effect upon citizens and society, notwithstanding the fact that recently the Ohio Constitution was amended overwhelmingly by the vote of the people, thus giving gambling an aura of respectability. Instead of a card deck, the state, itself, now conducts the gambling with the use of tickets and cards and allows similar gambling to be conducted for charitable or religious institutions.

Because of the foregoing, it is the finding of the court that Gregory is the rightful owner of the sum of $390, Bentivegna is the rightful owner of the sum of $106, Bolender is the rightful owner of $20 and AmVet Club No. 555 is the rightful owner of $245 and all the paraphernalia presently in the custody of the Canton Police Department, excepting the chips and the playing cards that were used in the poker game. Additionally, with reference to Bolender, the finding of the court is further reinforced in light of the fact that the charge of gambling was dropped as against this defendant.

The Canton Police Department is therefore ordered to return forthwith $390 to defendant Gregory, $106 to defendant Bentivegna, $20 to defendant Bolender, and $245 to AmVet Club No. 555 and all the paraphernalia, excepting the chips and cards, now presently in the possession and custody of the police department. The chips and cards are to be disposed of by the Canton police as it sees fit.

*Judgment accordingly.*