{¶ 28} The sole issue in this appeal is which party is the "owner" of the money in question that was seized. Since appellants were no longer "owners" of the money *Page 9 
seized at the time of the raid, they neither had "an unconditional right to intervene" conferred by statute, nor could they "claim[ ] an interest relating to the property * * * that is subject of the action * * *." Civ.R. 24(A) (Emphasis added). Accordingly, I respectfully dissent.
 {¶ 29} In their motion, appellants alleged that "the sum of $14,445 was taken from the event," and stated that it "belonged to the participants," because it was "temporarily exchanged for chips to play in the various games." (Emphasis added).
 {¶ 30} However, an "owner" of property "is defined to mean one who has dominion of a thing, real or personal." Dempsey v. Brighton Bank TrustCo. (1921), 14 Ohio App. 170, 173. With regard to money, the general rule is that "[possession is * * * prima facie evidence of ownership." Id.; Martin v. Elden (1877), 32 Ohio St. 282, 288.
 {¶ 31} Appellants herein participated in a "Las Vegas Night," in which they exchanged their money for chips for the purpose of gambling, i.e., the possibility of either winning or losing their stakes. Thus, once the appellants completed the transaction of purchasing their chips from Buckley, he legally became the "owner" of the money in question, in that he had "full proprietorship in and dominion over [the] property" from the time of the exchange. Dempsey, 14 Ohio App. at 173.
 {¶ 32} In holding that the trial court erred by not allowing appellants to intervene, the majority cites to State v. Argea (1989),60 Ohio Misc.2d 11, for the proposition that the government cannot "deprive * * * citizens of the right to possession of their money" *Page 10 
without "strictly adhering to and complying with the underlying statutory scheme * * *." Id. at 13. While I agree with the holding ofArgea, the facts of that case are in opposite.
 {¶ 33} In Argea, Canton police, pursuant to a search warrant, raided a poker game taking place at the AmVet Club. Id. at 11. Police seized the cards and chips on the poker table, and additionally, found and seized $245 which was kept on a table in an adjoining room, as well as $390, $106, and $20 from the pockets of the three appellants, two of whom were participating in the game while the third was in another room. Id. The defendants argued that the money taken was not subject to forfeiture because it was not in the poker pot or on the poker table. Id. at 11-12.
 {¶ 34} The trial court agreed with the defendants, holding that the failure of the police to return defendant's property was contrary to R.C. 2933.41 since "[o]ther than the chips and cards used in the poker game, the record is devoid of any evidence that the confiscated cash and club paraphernalia were used in the commission of the offense, or that the nature of the money or the circumstances of any of the defendants was such as to conclude that the property in question was illegal for the defendants to possess." Id. at 13. As a result, the police were ordered to return the money seized from the defendants' pockets, and the $245 and all paraphernalia, excepting the chips and cards, was to be returned to the AmVet Club.
 {¶ 35} Unlike the defendants in Argea, and Ryals v. Collins (1975),46 Ohio Misc. 25, on which that case relied, there is no evidence that the government "g[o]t into the pockets of its citizens when they [were] either [gambling] or in close proximity to [gambling]," and took money from them. 60 Ohio Misc. at 13. *Page 11 
 {¶ 36} There is no evidence, and appellants do not maintain, that cash had been seized from their persons at the time of the raid. Rather, only their playing chips were taken from them.
 {¶ 37} Accordingly, even under these holdings appellants wouldnot be entitled to a recovery of the money in question. Argea,60 Ohio Misc.2d at 13 (while the court ordered the money found in appellant's pockets to be returned to them, as the owners, the court ordered that the chips and cards that were confiscated be destroyed and the $245 found on the table be returned to AmVet Club No. 555 as the "rightful" owner); cf. Ryals, 46 Ohio Misc. at 28 (although plaintiff in a replevin action was entitled to the $255 that was found on the table in front of him during a cash poker game, he was not entitled to the $8 pot "in play" on the table when the raid took place).
 {¶ 38} Furthermore, because appellants were no longer "owners" of the money confiscated, neither of the statutes relied upon by the majority can be said to confer upon appellants "an unconditional right to intervene" as required by Civ. R. 24.
 {¶ 39} Former R.C. 2933.43 is not applicable to the instant case, since the only conviction was Buckley's conviction for "Operating a Gambling House" under R.C. 2915.03, a first degree misdemeanor. See R.C.2915.03(B). See In re Evidence Held by the Willoughby Hills PoliceDept., 11th Dist. Nos. 2005-L-058 and 2005-L-059, 2006-Ohio-2647, at ¶ 18 ("Before property is subject to forfeiture as contraband [under R.C. 2933.43(C)] * * * there must be an underlying felony conviction.") (citations omitted). On the other hand, former R.C. 2933.41 "only permits the return of confiscated evidence to those persons who can demonstrate that they have a right of possession of the *Page 12 property." In re Property Being Held by Geauga Cty. Sheriff (1998),129 Ohio App. 3d 676, 681-682 (citation omitted).
 {¶ 40} Since appellants had no legal right to possession of the money, their knowledge that the "Las Vegas" night was conducted illegally is irrelevant. Although none of the appellants were charged or convicted of any crime, R.C. 2915.02, the Gambling statute, merely requires that a person "knowingly engage in conduct that facilitates any game of chance conducted for profit." R.C. 2915.02(A)(2).
 {¶ 41} For the purpose of a violation of R.C. 2915.02(A)(2), "a person facilitates a game of chance * * * [by] playing any such game * * *." This, alone, would be sufficient to charge appellants with "knowledge" of the illegality of the event.
 {¶ 42} Money is exchanged for any number of legitimate and, unfortunately, illegitimate purposes. This does not take away from the fact that the legal "ownership" interest of such money transfers once the money changes hands.
 {¶ 43} For this reason, appellants simply had no standing to intervene in the present action, and I would affirm the judgment of the lower court. *Page 1