THE STATE OF OHIO, APPELLANT, *v.* GUINN, APPELLEE.

[Cite as State *v.* Guinn (1989), 42 Ohio St. 3d 92.]

(No. 88-21—Submitted February 8, 1989—Decided April 26, 1989.)

torney, and *Lawrence R. Fisse,* for appellant.

*R. Daniel Hannon,* for appellee.

HOLMES, J.  The sole issue for our determination in this case is whether the state's evidence was sufficient, beyond a reasonable doubt, to prove each essential element of the offense defined in R.C. 1333.92, prohibiting pyramid sales plans or programs. For the reasons which follow, we answer such query in the affirmative, and thus reverse the court of appeals.

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, at syllabus. The material elements of the crime of engaging in a pyramid sales plan or program are found in R.C. 1333.92, which provides:

"No person shall propose, plan, prepare, or operate a pyramid sales plan or program."

Aside from the elements of venue and identification of the defendant as the perpetrator, neither of which is seriously questioned in this case, there are but two material elements of R.C. 1333.92. These elements, as were recognized in *State* v. *Beckley* (1983), 5 Ohio St. 3d 4, 8, 5 OBR 66, 70, 448 N.E. 2d 1147, 1150, are (1) proof of some movement or act toward the execution, whether by the proposal, planning, preparation or operation, of (2) a pyramid sales plan or program. The second element of this crime is defined in two sections of the Revised Code, R.C. 1333.91 and 1333.99. R.C. 1333.91 provides, in pertinent part:

"As used in sections 1333.91 to 1333.94 of the Revised Code:

*George E. Pattison,* prosecuting at-

"(A) 'Pyramid sales plan or program' means any scheme, whether or not for the disposal or distribution of property, whereby a person pays a consideration for the chance or opportunity to receive compensation, regardless of whether he also receives other rights or property, under either of the following circumstances:

"(1) For introducing one or more persons into participation in the plan or program;

"(2) When another participant has introduced a person into participation in the plan or program.

"* * *

"(D) 'Participant' means a person who purchases, proposes, plans, prepares, or offers the opportunity to take part in, or advance into, a pyramid sales plan or program."

R.C. 1333.99(H) provides:

"Whoever violates section 1333.92 of the Revised Code is guilty of a felony of the fourth degree if the compensation is three hundred dollars or more, or if the offender has previously been convicted of an offense under section 1333.92 of the Revised Code. If the value of the compensation is less than three hundred dollars, violation of this section is a misdemeanor of the first degree."

We stress at this point that while an element of compensation must be involved as part of the pyramid plan for such plan to be proscribed under these statutes, it is not necessary that any compensation be *received* by the person proposing, planning, preparing or operating such plan for that person to be guilty of a violation of R.C. 1333.92. All that must be shown is that a person proposed, planned, prepared or operated a pyramid sales plan, *which plan* involves the payment of consideration by *a* person for the chance or opportunity to receive compensation. The "airplane" scheme at issue here, even though compensation was to be deferred until a later date, squarely fits within this statutory definition.

What the law disfavors is the plan itself and the methods by which it is presented. A pyramid sales plan or program may be a boon to early participants, who recoup their initial investment and realize a sizeable profit by encouraging others to invest their money and enter lower levels of the pyramid with the promise of similar profits for themselves. However, these latecomers invariably lose out on any profits, are often unable to recoup their initial investment, and may even expend additional funds attempting to recruit new participants from an ever-shrinking pool of investors. See Somers, Economic Crimes (1984) 8; Cochran, Dare to be Great, Inc.!: A Case Study of Pyramid Sales Plan Regulation (1972), 33 Ohio St. L.J. 676. Deceit and misrepresentation are the driving forces behind such programs, and thus even the mere planning, preparation or proposal of them has been proscribed by the General Assembly, in a manner which this court has determined is neither void for vagueness nor overbroad. *Beckley, supra,* at syllabus. As we emphasized in *Beckley* at 9, 5 OBR at 71, 448 N.E. 2d at 1151, " '[t]he role of the "spieler" in inducing prospective purchasers to invest their money is not to be underestimated,' " quoting *H M Distributors of Milwaukee, Inc.* v. *Dept. of Agriculture* (1972), 55 Wis. 2d 261, 272-273, 198 N.W. 2d 598, 605. We cannot agree with the court of appeals, however, which held that appellee merely "explained" the pyramid sales plan here, while the "pilots" were the principal "spielers" or proposers.

The term "propose," as used in R.C. 1333.92, is not defined in the

statute. Construed according to its common usage, and when used as here as a transitive verb, "propose" means "to offer for consideration, discussion, acceptance, or adoption * * *." Webster's Third New International Dictionary (1986) 1819; R.C. 1.42. Appellee did not merely explain the "airplane" scheme at issue here; he offered it for the acceptance or adoption of the persons present at the meeting. Appellee informally explained the scheme to those present several times. After the meeting was called to order, he proposed the scheme to them for their acceptance, going into detail on the amount of money needed to join and the amount of money that could be realized by the participants, and describing the manner in which to withdraw and deposit funds so as to avoid the attention of the federal government. Appellee then broke the meeting up into smaller groups, and supervised these groups, albeit silently, by drifting from one to another. This was no mere lecture on an "airplane" scheme. The fact that the individual pilots may have been used to "close" the deals does not lessen appellee's role as the one who proposed this pyramid sales plan. Appellee's conviction was thus supported by sufficient proof on each essential element of the indicted offense, beyond a reasonable doubt.

Notwithstanding the sufficiency of the evidence, appellee argues, as he did in the court of appeals,[1] that application of R.C. 1333.92 to him in this case violates the First Amendment to the United States Constitution. Essentially, appellee argues that R.C. 1333.92 is unconstitutional when applied to "mere statements." We have already pointed out, however, that appellee made more than "mere" statements; he proposed a prohibited pyramid sales plan at a meeting held for the express purpose of inducing its acceptance by those present. This type of speech, which solicits the commission of an unlawful commercial transaction *and* is itself inherently misleading and deceptive (due to the nature of pyramid plans described above), is not protected by the First Amendment.

Although all commercial speech was once regarded as unprotected by the First Amendment, *Valentine* v. *Chrestensen* (1942), 316 U.S. 52, that broad conclusion was rejected in *Bigelow* v. *Virginia* (1975), 421 U.S. 809; and *Virginia State Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748. However, recognizing the " 'common sense differences' between commercial speech and other varieties," *Bates* v. *State Bar of Arizona* (1976), 433 U.S. 350, 381; *Virginia State Bd. of Pharmacy, supra,* at 771, fn. 24; *Beckley, supra,* at 10, 5 OBR at 71, 448 N.E. 2d at 1151, the Constitution "affords less protection to commercial speech than to other constitutionally safeguarded forms of expression." *Bolger* v. *Youngs Drug Products Corp.* (1982), 463 U.S. 60, 64-65, and cases cited therein. The deceptive spiel of one who, as appellee here, proposes a prohibited pyramid sales plan or program is not protected by the First Amendment for the reason that "[u]ntruthful speech, commercial or otherwise, has never been protected for its own sake. *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 340 (1974); *Konigsberg* v. *State Bar,* 366 U.S. 36, 49, and n. 10 (1961). Obviously, much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We

---

[1] The court of appeals, having determined the appeal on the basis of appellee's Crim. R. 29 motion, declined to pass on the constitutionality of R.C. 1333.92.

foresee no obstacle to a State's dealing effectively with this problem. The First Amendment, as we construe it today, does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." *Virginia Bd. of Pharmacy, supra,* at 771-772; *Friedman* v. *Rogers* (1978), 440 U.S. 1, 9-10; *Bose Corp.* v. *Consumers Union of United States, Inc.* (1983), 466 U.S. 485, 504, at fn. 22.

The case of *Brandenburg* v. *Ohio* (1969), 395 U.S. 444, is thus inapposite. The court in *Brandenburg* struck down Ohio's Criminal Syndicalism Act, as being in violation of the First and Fourteenth Amendments both on its face and as applied to a leader of a Ku Klux Klan group, on the grounds that it purported "to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others merely to advocate" the doctrines of criminal syndicalism. *Id.* at 449. The case established "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing *imminent* lawless action and is likely to incite or produce such action." (Emphasis added.) *Id.* at 447. However, the *Brandenburg* principle is inapplicable to the instant case, wherein commercial speech is involved. The political speech at issue in *Brandenburg* is at the core of the First Amendment, while commercial speech, as explained above, is considerably less immune from government regulation. See *Virginia Bd. of Pharmacy, supra,* at 776-781 (Stewart, J., concurring). Finally, even if the *Brandenburg* principle were applicable in the instant setting, it is clear that the advocacy involved here falls within the exception

to that principle: appellee's proposal was directed to produce imminent lawless action (engaging in a prohibited pyramid sales plan) and was likely, indeed intended, to produce such action. As explained above, the sole purpose of this meeting was to convince those assembled to invest in the "airplane" scheme proposed by appellee.

In sum, our thoughts were first expressed by the Wisconsin Supreme Court in its decision in *H M Distributors, supra*: "Speaking is involved, but the right to prohibit as an unfair trade practice the chain distributor scheme [a type of pyramid sales plan] derives from what is being peddled and how it is being peddled. The right to regulate or prohibit derives from the unfairness of what is done and the scheme is not saved by the sales pitch that accompanies it." *Id.* at 273, 198 N.W. 2d at 605.

For all the foregoing reasons, the judgment of the court of appeals is reversed, and the appellee's judgment of conviction is reinstated.

*Judgment reversed.*

MOYER, C.J., WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. I respectfully dissent. While we all abhor crime and insist that perpetrators be punished, such should not be the case when, in doing so, it is necessary to cavalierly disregard the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution. The majority spends a considerable amount of time and space in an attempt to distinguish *Brandenburg* v. *Ohio* (1969), 395 U.S.

444. After all is said and done, I think it is fair to say that the majority's position is that *Brandenburg* is distinguishable because it says it is.

The majority states: "What the law [in question] disfavors is the plan itself and the methods by which it is presented. * * *" In fact, the plan in *Brandenburg* and the methods by which it was presented were, in comparison, much more serious and abhorrent than the scheme now before us.

The majority then tries to distinguish *Brandenburg* on the basis of the commercial-speech doctrine. Of course, there is no product being pushed or sold. Such distinction does not give the majority even a moment's pause. The fact is, however, that there is *nothing* in this record that anything of value was exchanged—if anything ever was. The undercover agent heard the proposal, signed up to participate in the scheme, and then departed the meeting.

In sum, the majority brushes aside the First Amendment. While I admit the result sought by the majority is laudable, the price is just too high to pay. If this court does not protect and defend the First Amendment—who will?

Accordingly, I must respectfully dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.