STATE ex rel. CELEBREZZE, Appellee,

v.

HOWARD, Appellant;

Bentley, et al., Appellees.

[Cite as *State ex rel. Celebrezze v. Howard* (1991), 77 Ohio App.3d 387.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–338.

Decided Sept. 26, 1991.

388

*Lee Fisher,* Attorney General, *Dianne Goss Paynter* and *David J. Espinoza,* for plaintiff-appellee.

*Postlewaite & Smith* and *Charles C. Postlewaite,* for defendant-appellant.

*Steller, Magnuson & Barone* and *Joseph J. Barone,* for defendant-appellee Jeff Koontz.

---

McCormac, Judge.

Defendant-appellant, Susan Howard, appeals from the judgment of the Franklin County Court of Common Pleas finding her in violation of the Consumer Sales Practices Act and the Anti–Pyramid Sales Law by her participation in a program known as the "Circle of Eight." The trial court permanently enjoined appellant from further violations, assessed $5,000 in civil penalties and ordered appellant to pay $6,500 in restitution.

This case arose out of an investigation by the Attorney General's office into suspected pyramidal activities being conducted by an entity known as the "Circle of Eight," a.k.a. Columbus Investment Seminar, a.k.a. Living Well Workshop. The investigation culminated in a Circle of Eight meeting raid by the Columbus Vice Squad. As a result of the raid, the police seized $1,770 in cash and three folders with circle diagrams from appellant. The police also learned that appellant had signed the rental agreement for the hotel banquet room in which the meeting was held.

Subsequent to the raid, appellant was interviewed by Detective Alex Massie of the Columbus Vice Bureau. In exchange for a grant of immunity from criminal prosecution, appellant supplied information which police hoped would lead to the arrest of others involved in the scheme. Massie was called to testify at trial and, over objection, recounted his discussions with appellant during the interview. Massie stated that he was present at the vice bureau raid and that he had conducted the interview with appellant. He also explained how the Circle of Eight Pyramid operated as it was explained to him by appellant. Each pyramid consisted of four concentric circles. The innermost circle was occupied by one person, with two people in the next circle, four in the third and eight in the outermost circle. New participants were recruited and given the opportunity to buy into the outermost circle by paying $1,500 to the person occupying the center. When all eight outside spaces were filled, the circle split into two new pyramids with each person moving in one circle. The splitting would continue, if enough new players were enticed into joining, until everyone reached the center of their own circle.

Massie further testified that appellant stated that she had made $28,000 from the scheme through her involvement in six separate circles. Appellant also told Massie that, during meetings, she went by the code name of "Caribbean Queen."

Testimony was also elicited from Stacy Blankenship, the named plaintiff in the Attorney General's case. She stated that, through a family friend, Philip Brunney, Jr., she became aware of an opportunity to make $12,000 from an initial $1,500 payment. Acting on Brunney's advice, Blankenship and her husband attended a "Living Workshop" held at an area hotel. Upon arrival, they were greeted by Brunney who led them to a table with a circular diagram on it. Thereafter, a woman who identified herself as "Caribbean Queen" came to the table and explained how the scheme worked. Blankenship later learned that "Caribbean Queen" was appellant, Susan Howard. In her explanation, appellant indicated that she was in the center of the circle which the Blankenships were being invited to join. Eventually, the Blankenships paid $1,500 and joined appellant's circle. The Blankenships never recouped their money.

At the conclusion of appellee's case, appellant moved for dismissal, pursuant to Civ.R. 41. The referee reserved ruling and, thereafter, appellant filed a motion for directed verdict which included a motion to strike the testimony of Detective Massie. Appellant waived the presentation of further evidence and the matter was submitted on memorandum. The referee submitted two reports to the trial court. The trial court overruled appellant's objections and entered judgment for appellee.

Appellant appeals and raises the following assignments of error:

"I. The trial court erred to appellant's prejudice by admitting the testimony of Detective Massie of statements made during compromise negotiations, in violation of Rule 408 of the Ohio Rules of Evidence.

"II. The trial court erred to appellant's prejudice by overruling her motion for dismissal of appellee's anti-pyramid sales law claim on the grounds that appellee failed to proffer sufficient evidence to prove appellant's participation in the alleged pyramid scheme.

"III. The trial court erred to appellant's prejudice by overruling her motion for dismissal of appellee's Consumer Sales Practices Act claim on the grounds that appellee failed to proffer sufficient evidence to prove that the transaction was a 'consumer transaction' within the meaning of the statute, and by ruling that a violation of the anti-pyramid sales law constitutes a violation of the Consumer Sales Practices Act."

■  By her first assignment of error, appellant argues that the testimony of Detective Massie concerning statements made by her should be barred by Evid.R. 408. Appellant contends that the statements were made during compromise negotiations and were given in order to secure immunity from criminal prosecution.

In pertinent part, Evid.R. 408 provides:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.  * * * "

The language employed by Evid.R. 408 tends to support the conclusion that it is meant to exclude conduct or statements in the compromise of civil actions only. The rule speaks in terms of disputed claims as opposed to alleged crimes or offenses. Our research has failed to uncover any authority for the proposition that the exclusionary provisions of Evid.R. 408 were meant to apply to compromises in criminal proceedings. At least one commentator is on record as endorsing the purely civil nature of Evid.R. 408. See Giannelli, Ohio Evidence Manual, 39, Section 408.01.

When Evid.R. 408 is read in conjunction with Evid.R. 410, it becomes more apparent that Evid.R. 408 is intended purely in regard to compromises in civil actions. Evid.R. 410 excludes statements made during plea negotiations in any subsequent civil or criminal action. Evid.R. 410 expressly applies to both civil and criminal actions, whereas Evid.R. 408 includes no such expansive language. Appellant would ask this court to expand Evid.R. 408 to cross over from one type of action to another when the language of the rule, as well as complementary provisions of the Rules of Evidence, would seem to indicate otherwise. We assume that, by promulgating two separate and distinct rules, the Supreme Court intended Evid.R. 408 to apply to compromises in civil matters only. Consequently, we decline the expansion of Evid.R. 408 beyond the present interpretation.

■  We should note in passing that, while appellant has not argued the applicability of Evid.R. 410 to this action, it would be of no avail if she did. Ohio courts have held that Evid.R. 410 only applies to plea negotiations and where no plea is entered, as in the case of a grant of immunity, then the exclusionary provisions of Evid.R. 410 do not apply. See *State v. Dancy* (Dec. 17, 1981), Cuyahoga App. No. 59336, unreported, 1981 WL 4696.

Appellant's first assignment of error is overruled.

Appellant next argues that the trial court erred by failing to dismiss appellee's anti-pyramid sales claim. Appellant contends that the decision was against the manifest weight of the evidence.

■ When there is competent, credible evidence to support the trial court's decision, an appellate court will not overturn that decision based on a manifest weight argument. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Appellant must demonstrate that the trial court abused its discretion in rendering the judgment it did given the facts before it. Abuse of discretion implies a decision that is without reasonable basis, one that is clearly wrong. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280.

■ Appellant's argument is premised, in large part, upon a reversal of the trial court's evidentiary ruling. Since we have upheld the trial court's decision to admit into evidence the statements made by appellant to Detective Massie, this assignment must necessarily fail. Appellant admitted to being involved in six separate pyramids, to making $28,000 off the scheme, and to explaining how the scheme worked to other potential participants.

Massie's testimony of appellant's admissions was corroborated by the independent testimony of Stacy Blankenship. Blankenship identified appellant as the person who explained the Circle of Eight process to her. Furthermore, hotel records indicate that it was appellant who signed the rental agreement for use of the banquet room on the night of the police raid. Thus there was substantial evidence of all of the elements of the violation of R.C. 1333.92 and the trial court did not abuse its discretion in finding a violation. Fortifying this conclusion is the Ohio Supreme Court's ruling in *State v. Guinn* (1989), 42 Ohio St.3d 92, 537 N.E.2d 656, where an almost identical scheme was held to violate the Anti–Pyramid Sales Law.

Appellant's second assignment of error is overruled.

■ In her third and final assignment of error, appellant argues that the trial court erred in concluding that there was a consumer transaction as that term is defined in R.C. 1345.01, and that the trial court further erred by concluding that a violation of the Anti–Pyramid Sales Law constitutes a violation of the Consumer Sales Practices Act ("CSPA").

R.C. 1345.01(A) defines a "consumer transaction" as:

"(A) 'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.  * * * "

While appellant does contend that she was not a supplier and that the entry level participants were not consumers, her primary argument centers on the trial court's finding that the transaction was primarily for personal, family or household purposes. It is appellant's contention that this was a business investment and, therefore, not one for personal gain. Despite some discussion in other cases which tend to call pyramidal participation "investing," we believe that it is more properly categorized as gambling· or an award by chance, thereby placing it squarely within the CSPA. Money paid into the Circle of Eight, or any other pyramidal scheme, does not generate a return by its use in some productive capacity but, rather, depends only upon the solicitation of new participants. The activity in which appellant was engaged cannot properly be termed an investment.

■ Appellant cites this court's decision in *Jackson v. Krieger Ford, Inc.* (Mar. 28, 1989), Franklin App. No. 88AP–1030, unreported, 1989 WL 29351, for the proposition that Ohio's CSPA should be narrowly construed. Appellant has misinterpreted our opinion. We stated that the Act should be narrowly confined to apply to consumers only, since the Act specifically left out business consumers which other states chose to include within their consumer protection statutes. Therefore, the general principle that remedial acts should be liberally construed continues to apply to the CSPA when defining who the parties to a transaction are. *State ex rel. Celebrezze v. Hughes* (1991), 58 Ohio St.3d 273, 569 N.E.2d 1059. In *Jackson,* the evidence was overwhelming that the purchaser intended to commit the vehicle to a business use. In this case, there is no evidence that any of the consumers were engaged in the business of participation.

Even if we were to assume for the purpose of discussion only, that this transaction could be termed an investment of the type not specifically excluded from the CSPA, then that does not automatically mean it is not a consumer transaction. The Uniform Consumer Sales Practices Act, upon which the Ohio statute is modeled, provides that the act is to be construed:

" '(2) [T]o protect consumers from suppliers who commit deceptive and unconscionable sales practices;

" '(3) to encourage the development of fair consumer sales practices; * * *.' 7A Uniform Laws Anno. 3, Uniform Consumer Sales Practices Act, Section 1 (1978)." *Thomas v. Sun Furniture Co.* (1978), 61 Ohio App.2d 78, 81, 15 O.O.3d 92, 11 O.O.3d 26, 28, 399 N.E.2d 567, 569. See, also, 137 Ohio Laws, Part II, 3219.

The CSPA was adopted primarily for the reason that consumers need to be protected from unscrupulous suppliers and that the common law provides inadequate remedies to achieve this result. A consumer (particularly a

nonbusiness one) may be relatively naive and unskilled in the area involved, whereas the supplier will generally be more knowledgeable about the field, practice or product. As marketing and consumer services became more complex, the legislature felt that consumers must be afforded redress that permits them to escape from the results of a deceptive seller. Therefore, a consumer transaction should be defined with the policy of protecting the unwary consumer in mind.

This is precisely why we stated in *Jackson, supra,* that the primary focus when defining a consumer transaction should be placed on the parties, not the good itself. As the Court of Appeals for Lucas County phrased it, the " * * * objective manifestations of the parties, as set forth by totality of the circumstances * * * " determines whether a consumer transaction has been entered. *Tomes v. George P. Ballas Leasing, Inc.* (Sept. 30, 1986), Lucas App. No. L–85–359, unreported, 1986 WL 11420.

The totality of the circumstances presented by this case reveals that the Blankenships were not engaged in the business of investing or as professional gamblers. Mrs. Blankenship testified that she was employed as a legal secretary and the only use of the term "business" in her testimony was offered by appellant's attorney, not by Blankenship. Blankenship did state that she and her husband had attended real estate seminars in the past, but there was no evidence refuting her testimony that her sole occupation was that of a secretary. We agree with the trial court's conclusion that the Blankenships entered into this transaction for the purpose of acquiring greater personal wealth and not for the purpose of beginning a new business venture. Their payment of the monies was an isolated incident and cannot be construed as an ongoing pattern that should be construed as a business.

Appellant, on the other hand, admitted that she was involved in several circles. Furthermore, the evidence shows that she was significantly involved in the planning and presentation of the pyramid scheme. Appellant also planned the particular meeting, at least to the extent that she made the booking for the hotel banquet room. Finally, appellant was the principal presenter of the plan to the Blankenships identifying herself as "Caribbean Queen" and explaining the circular scheme in detail. There is ample evidence to support the trial court's conclusion that the appellant was engaged in the business of pyramidal activity and, therefore, was a supplier within the meaning of R.C. 1345.01.

We find that the transaction was not truly an investment but, rather, a game of chance and, therefore, that it falls within the list of transactions covered by the CSPA. Even if it could be termed an investment, the policy

behind the CSPA combined with the totality of the circumstances and the parties involved leads us to the same conclusion.

Appellant also argues that the trial court erred by concluding that a violation of the Anti–Pyramid Sales Law constitutes a violation of the CSPA.

■ Appellant first contends that the Anti-Pyramid Sales Law preempts the CSPA. This conclusion is inconsistent with the language of the anti-pyramid law itself. R.C. 1333.95 states: "The remedies in sections 1333.91 to 1333.95 of the Revised Code are in addition to remedies otherwise available." As the Ohio Supreme Court has stated: " ' * * * [T]he General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose.' * * * " *Brown v. Martinelli* (1981), 66 Ohio St.2d 45, 50, 20 O.O.3d 38, 41, 419 N.E.2d 1081, 1084. To hold that the Anti-Pyramid Sales Law cannot be used in conjunction with the CSPA would invalidate R.C. 1333.95 and render meaningless the General Assembly's inclusion of that provision.

We also find appellant's reliance on *Heritage Hills, Ltd. v. Deacon* (1990), 49 Ohio St.3d 80, 551 N.E.2d 125, to be misplaced. In holding that the Landlord–Tenant Act excluded application of the CSPA, the Supreme Court cited three reasons that are not present in this case: (1) the Landlord–Tenant Act contains no additional remedies provision similar to R.C. 1333.95; (2) the staff notes to the model Landlord-Tenant Act state that the drafters expressly disfavor the application of a state's CSPA to leaseholds; and (3) the Landlord–Tenant Act contains its own unconscionable practice provision in R.C. 5321.-14(A).

■ Lastly, appellant argues that there was insufficient evidence to support a finding that she violated the CSPA. We have previously addressed and determined that appellant was a supplier, that the Blankenships were consumers and that a consumer transaction was entered into. The only question remaining is whether appellant engaged in an unfair or deceptive practice. In *State v. Guinn*, the Supreme Court stated that " * * * [d]eceit and misrepresentation are the driving forces behind such [pyramidal] programs * * *." *Id.*, 42 Ohio St.3d at 94, 537 N.E.2d at 658. Every other anti-pyramid sales case we have reviewed has used language of a similar nature. The scheme is deceptive in itself which is why the legislature enacted the law. Furthermore, Mrs. Blankenship testified that appellant told her the Circle of Eight was a legal activity when it plainly was not, which fulfills the requirement of a deceptive statement. The trial court did not abuse its discretion in finding that sufficient evidence was presented to support a violation of R.C. 1345.02.

Appellant's third assignment of error is overruled.

Finally, addressing the equities, we note that appellant admitted to making $28,000 from her participation in the illegal activity. The trial court assessed a judgment against her totalling $11,500 and the prosecutor granted her immunity from criminal prosecution. Therefore, appellant escaped criminal liability and is $16,500 richer than when she started. Despite the adverse result in this civil action, she has benefitted from the illegal pyramidal activity.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and PEGGY BRYANT, JJ., concur.