**In re DISPOSITION OF PROPERTY HELD BY GEAUGA COUNTY SHERIFF.**

[Cite as *In re Disposition of Property Held by Geauga
Cty. Sheriff* (1998), 129 Ohio App.3d 676.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 97–G–2091.

Decided Sept. 8, 1998.

*David P. Joyce*, Geauga County Prosecuting Attorney, and *Gregory J. O'Brien*, Assistant Prosecuting Attorney, for appellant, Geauga County Sheriff.

*Newman, Leary & Brice* and *Marie L. Umholtz*, for appellees, Angela Greene, Laura Savoca, and Ron Davis.

CHRISTLEY, Presiding Judge.

This is an accelerated calendar appeal. Appellant, the Geauga County Sheriff, appeals the decision of the Geauga County Court of Common Pleas, which ordered appellant to return a total of $6,000 of lawfully seized cash, $2,000 to each of the three appellees herein, Ron Davis, Angela Greene, and Laura Savoca. For the reasons that follow, we affirm the judgment of the trial court.

On October 4, 1995, the Geauga County Sheriff's Office and the Ohio Attorney General's Office exposed a pyramid sales plan underway in Geauga County, Ohio. On this date, approximately one hundred fifty people were attending a meeting of what was called "The Investor's Club" at a private residence in Claridon Township. Appellees stipulated below, through counsel, that this meeting was, in actuality, a meeting designed to promote a pyramid sales plan of the type prohibited by R.C. 1333.92.

Appellees asserted that they attended the meeting and listened to the organizers explain the various rules of the scheme, not knowing that it was illegal.[1] According to appellees, the organizers were asking the attendees to "invest" $2,000 each in the plan, explaining the plan through the use of a pyramid chart. The bottom level of the pyramid contained eight empty boxes for "New Investors." When each new recruit turned over his or her $2,000 in cash, he or she

---

1. The record contains three affidavits from each appellee as to what happened on the night in question. The record also contains a deposition from appellee Angela Greene in which she testified as to what happened on the night in question. However, only one appellee, Ron Davis, actually testified at the hearing on the matter.

would sign his or her name in one of the eight empty boxes. Only first names were used throughout. The next level of the pyramid contained four boxes. The persons represented therein were known as "Vice Presidents." The next level contained two boxes for "Presidents." The head of the pyramid contained only one box for "The Chairman."

The basic idea of the plan was that as soon as the eight boxes for new investors were full, the chairman would take the new investors' investment totaling $16,000 (eight persons at $2,000 each) and leave the plan. The pyramid structure would then split in half, the new investors would move up to become vice presidents, the vice presidents would move up to become presidents, and so forth. Of course, the entire plan was dependent on the constant influx of new investors, each willing to turn over $2,000 to the reigning chairman. This was, without question, a pyramid sales plan of the type prohibited by R.C. 1333.92.

The organizers of the meeting informed appellees that they would each be expected to bring new recruits as new investors. Appellees were assured that the scheme was legal. They were also informed that if they did decide to participate and turn over their money, they could still change their minds, withdraw from the plan, and have their money returned to them.

Appellees alleged that they signed their first names in three of the empty boxes contained in one of several pyramid charts present at the meeting. The reigning chairman of this pyramid was Daniel M. Wojnarowski. They each handed Wojnarowski an envelope containing $2,000 in cash. Appellee Ron Davis wrote "Ron D." across his envelope. Appellee Angela Greene's envelope contained her first and last names. Appellee Laura Savoca's envelope contained only her first name.

When the undercover authorities determined that a pyramid scheme was in operation, they revealed their identities. Pursuant to warrants, they searched the premises, made several arrests of key organizers, and seized cash totaling $15,000 and all charts involved in the pyramid plan. They told all attendees who were "first timers," those who had not previously attended a similar meeting, that they were free to leave. The three appellees left thereafter.

According to appellee Angela Greene's deposition testimony, she thereafter telephoned Detective Jim Falb of the Geauga County Sheriff's Office to inquire about return of all three appellees' money. Detective Falb later conceded that the conversation occurred. In addition, police reports indicate that three envelopes, each containing $2,000 in cash, were confiscated on the night of the raid, among other items. One of these envelopes contained the name of "Ron D," the other "Angie Greene," and the third the name of "Laura."

On January 17, 1997, appellant filed a motion requesting that the $15,000 of seized cash be converted for use by appellant pursuant to R.C. 2933.41. The attached exhibit revealed that $6,000 of the cash came from Wojnarowski, the chairman to whom appellees allegedly gave their money. On January 28, 1997, appellant filed notice of service of the motion upon four individuals, one of whom was Wojnarowski. Appellees were not served with notice of the motion.

The matter came on for an evidentiary hearing on February 24, 1997. Obviously none of the three appellees appeared at the hearing. Nor did any of the served individuals appear. The trial court granted appellant's motion the next day, indicating in its judgment entry that "[a]ll those persons claiming or known to have any interest in such monies have been notified of the within motion, but have failed to appear in person or by counsel."

On March 14, 1997, apparently after learning of the order, appellees filed a number of joint motions in the trial court, namely a petition for return of property, a motion for relief from judgment, a motion for a temporary restraining order, and a motion to intervene and to be added as parties of interest. Appellees asserted that appellant fraudulently failed to notify appellees of the hearing despite the fact that it had knowledge of their claims to the funds and their telephone numbers. Three affidavits were attached in support of their motion for relief from judgment. However, their motion for a temporary restraining order was not supported by way of affidavits.

On March 19, 1997, the trial court ordered that appellees be added as parties of interest and that appellant be restrained from using $6,000 of the funds during the pendency of the action. On March 25, 1997, appellant moved the court to vacate the trial court's orders of March 19, 1997. The trial court denied appellant's motion the next day, referring counsel to Civ.R. 62(A).

Two depositions were thereafter taken by appellant, one of appellee Ron Davis and the other of appellee Angela Greene. On July 25, 1997, the trial court granted appellees' motion for relief from judgment on the grounds that they were deprived of procedural due process. The court thereafter vacated its prior judgment entry of February 25, 1997 and set the matter for a hearing on the merits of appellant's motion for disposition of property.

A hearing was held on August 20, 1997. Only two witnesses were called to testify: Detective Falb was called on behalf of appellant and Ron Davis testified on behalf of appellees. Appellees' counsel indicated that appellee Angela Greene was unable to obtain permission from her employer to attend the hearing. Counsel had no explanation for appellee Laura Savoca's absence.

Appellee Ron Davis testified that he indeed signed the pyramid chart and that he turned over $2,000 in cash to the chairman. He claimed that he had no

knowledge that the pyramid plan was illegal and that he thought he still had the opportunity to change his mind after turning over his money. However, he conceded that he understood that if he decided to remain in the pyramid plan, he would be required to seek out new recruits to join in the plan as new investors. Detective Falb conceded that he spoke with appellee Angela Greene concerning the return of the money for herself and appellee Laura Savoca.

Several exhibits were introduced into evidence at the hearing without objection. One of these was a detailed report from Detective Falb that indicated that three envelopes bearing the names "Angie Green," "Ron D," and "Laura" were seized pursuant to a warrant, each containing $2,000 in cash. They were recovered from the person of the chairman, Wojnarowski, and each also bore the name of "Dan" on it.

The report further indicated that four individuals called to ask that their money be returned, including appellees Angela Greene and Laura Savoca. However, Detective Falb testified that he never actually spoke to appellee Laura Savoca on the telephone and that he learned of her demands only through appellee Angela Green. The pyramid chart showing each appellee's first name in the eight boxes at the bottom level of the pyramid reserved for new investors was also admitted into evidence.

On August 27, 1997, the trial court granted appellant's motion to dispose of the property in part and denied it in part. The court found that the three appellees each paid Wojnarowski to participate in the pyramid scheme but that none of the appellees violated the terms of the statute prohibiting such schemes. The court further found that none of the money was contraband or otherwise illegal to possess, and thus held that appellees were entitled to return of their money in the amount of $2,000 to each appellee. The court rejected appellant's arguments that appellees were offenders, coconspirators, or accomplices under the statute prohibiting pyramid schemes and found instead that they were the very persons the statute was meant to protect. Appellant was allowed to convert the remaining $9,000 of the $15,000 for his use.

Appellant perfected a timely appeal, asserting two assignments of error:

"[1.] The trial court erred by find [sic] that the respondents had provided evidence of ownership to a portion of the confiscated $15,000.00 and by holding that the respondents were entitled to the return of a portion of the confiscated $15,000.00 in contravention of R.C. 2933.41(C).

"[2.] The trial court erred by granting respondents [sic] motion for a temporary restraining order which did not comply with Civil Rule 65(A) and by ordering that the temporary restraining order was in affect [sic] until the conclusion of the case."

682 of error, appellant argues that the trial court committed

In its first assignment of error, appellant argues that the trial court committed reversible error when it determined that appellees were entitled to return of the money. First, appellant alleges that no competent, credible evidence supported the trial court's finding that appellees were the owners of the disputed property. Second, appellant argues that even if appellees successfully established ownership, R.C. 2933.41(C) precludes the return of the property to them.

Proceedings under R.C. 2933.41 are criminal in nature but civil in form. *State v. Lilliock* (1982), 70 Ohio St.2d 23, 24 O.O.3d 64, 434 N.E.2d 723, paragraph two of the syllabus. Thus, the Rules of Civil Procedure apply to these proceedings. *Id.* at paragraph three of the syllabus. As with other appeals of civil matters, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

R.C. 2933.41 governs the disposition of property held by a law enforcement agency. The statute authorizes a law enforcement agency to convert unclaimed or forfeited property in its possession for its own use, with the approval of the court. R.C. 2933.41(D)(8). As a rule, forfeiture statutes and statutes that result in a taking of private property must be strictly construed against the law enforcement agency seeking to convert the property for its own use. *Lilliock,* 70 Ohio St.2d at 25, 24 O.O.3d at 65, 434 N.E.2d at 724–725; *Eastlake v. Lorenzo* (1992), 82 Ohio App.3d 740, 743, 613 N.E.2d 247, 249.

The statute requires the law enforcement agency to make a reasonable effort to notify the persons entitled to possession of the property of when and where it can be claimed, and to return the property to them at the earliest possible time. R.C. 2933.41(B).

However, a person loses any right to possession of that property when R.C. 2933.41(C) applies. This provision reads:

"(C) A person loses any right that the person may have to the possession, or the possession and ownership, of property if any of the following applies:

"(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and the person is a conspirator, accomplice, or offender with respect to the offense.

"(2) A court determines that the property should be forfeited because, in light of the nature of the property or the circumstances of the person, it is unlawful for the person to acquire or possess the property."

Thus, a threshold issue exists as to whether a person actually possesses or owns the property. It is clear that the statute permits the return of confiscated

evidence only to those persons who can demonstrate that they have a right of possession of the property. *Lorenzo*, 82 Ohio App.3d at 741, 613 N.E.2d at 247.

 Applying the foregoing to the case at bar, we determine that competent, credible evidence existed to support the trial court's finding that the three appellees established a possessory interest in the funds.

Appellee Ron Davis testified that he placed $2,000 in cash in an envelope and gave it to the chairman Wojnarowski. He wrote "Ron D." on the envelope. Appellant's officers discovered an envelope on Wojnarowski's person with $2,000 in cash inside, across which the name "Ron D." was written. Davis testified that he signed his name on the pyramid chart, indicating that he was a new investor. Contrary to appellant's assertions, this appellee clearly established a possessory interest in the funds.

Competent, credible evidence also supported the trial court's finding that appellee Angela Greene had a possessory interest in $2,000 of the funds. The name "Angie Greene" was written across one of the envelopes containing $2,000 in cash. The cash was found on Wojnarowski. The pyramid chart exhibit indicated that an "Angie" joined as a new investor in Wojnarowski's pyramid. While her absence at the hearing and the resulting lack of testimony make her claim more remote than that of appellee Ron Davis, there is, nevertheless, that minimum level of competent, credible evidence of entitlement to the funds.

Appellee Laura Savoca's claim is somewhat less clear, as she did not testify at the hearing. However, the pyramid chart indicated that a Laura became a new investor in Wojnarowski's pyramid on the night in question. No other "Laura" has made a claim, and Laura Savoca is the name consistently identified since the night of the raid, both by the police and the other appellees.

Detective Falb's report indicated that a Laura Savoca was involved in the pyramid plan and that she telephoned claiming entitlement to the funds. Detective Falb also indicated that appellee Angela Greene told him that "Laura" was her friend and that Laura also had an interest in one of the envelopes. Although this testimony was arguably inadmissible hearsay in so far as it would be offered to prove ownership of the funds, no objection was raised to this testimony.

 Having concluded that all three appellees demonstrated a possessory right to the property, the analysis turns to whether R.C. 2933.41(C) should apply to deny them return of that property. *Lorenzo*, 82 Ohio App.3d at 744, 613 N.E.2d at 249–250. Appellant contends that the three became operators of the illegal pyramid scheme when they turned over their money to the chairman and signed their names on the pyramid chart. The trial court found they were not operators and were not otherwise culpable and, in fact, that they were the very victims the statute was designed to protect. We agree with this conclusion.

R.C. 1333.91 *et seq.* prohibits pyramid sales plans. R.C. 1333.91 defines a pyramid sales plan or program. It was conceded below that the instant scheme was a pyramid sales plan. R.C. 1333.92 states: "No person shall propose, plan, prepare, or operate a pyramid sales plan or program." Notably absent from the legislation is a prohibition on participation in a pyramid sales plan.

The Supreme Court of Ohio had occasion to consider this legislation in *State v. Guinn* (1989), 42 Ohio St.3d 92, 94, 537 N.E.2d 656, 658. The court elaborated on the purpose of the statute as follows:

"What the law disfavors is the plan itself and the methods by which it is presented. A pyramid sales plan or program may be a boon to early participants, who recoup their initial investment and realize a sizeable profit by encouraging others to invest their money and enter lower levels of the pyramid with the promise of similar profits for themselves. *However, these latecomers invariably lose out on any profits, are often unable to recoup their initial investment, and may even expend additional funds attempting to recruit new participants from an ever-shrinking pool of investors.* Deceit and misrepresentation are the driving forces behind such programs, and thus even the mere planning, preparation or proposal of them has been proscribed by the General Assembly, in a manner which this court has determined is neither void for vagueness or overbroad. [*State v.*] *Beckley* [(1983), 5 Ohio St.3d 4, 5 OBR 66, 448 N.E.2d 1147], syllabus. As we emphasized in *Beckley* at 9, 5 OBR at 71, 448 N.E.2d at 1151, ' "the role of the 'spieler' in inducing prospective purchasers to invest their money is not to be underestimated, quoting *HM Distributors of Milwaukee, Inc. v. Dept. of Agriculture* (1972), 55 Wis.2d 261, 272–273, 198 N.W.2d 598, 605." ' " (Emphasis added and citation omitted.)

Other courts have recognized the fact that new recruits to a pyramid scheme are victims of the plan. See *State ex rel. Celebrezze v. Howard* (1991), 77 Ohio App.3d 387, 602 N.E.2d 665 (new recruits to "Circle of Eight" lost $1,500 to a pyramid scheme). Indeed, the General Assembly has expressed an intent to assist those persons who lost money to another in a pyramid scheme. R.C. 1333.93 states:

"Any contract made in violation of section 1333.92 of the Revised Code is void. Any person who has paid consideration for the chance or opportunity to participate in a pyramid sales plan or program may recover, in a civil action, the amount of the consideration paid, together with reasonable attorney fees, from any participant who has received compensation under either of the following circumstances:

"(A) For introducing the person into participation in a pyramid sales plan or program;

"(B) When another participant has introduced the person into participation in a pyramid sales plan or program."

In addition, the legislature indicated that this was not the sole remedy that aggrieved participants could pursue. R.C. 1333.95 dictates that "[t]he remedies in sections 1333.91 and 1333.95 of the Revised Code are in addition to remedies otherwise available." In *State ex rel. Celebrezze,* the court upheld the trial court's finding that a violation of the Consumer Sales Practices Act took place, as well as a violation of the antipyramid statute.

Applying the foregoing, we determine that new recruits are the very persons that the statute is designed to protect. Consequently, they should not be considered as principals, accomplices, or coconspirators in the pyramid plan for whom recovery is not an option under R.C. 2933.41(C). Cf. *State v. Tuttle* (1903), 67 Ohio St. 440, 66 N.E. 524.

Moreover, there was no evidence introduced at the hearing that demonstrated that any of the appellees acted as a principal, an accomplice, or a coconspirator in the proposal, planning, preparation, or operation of a pyramid plan within the ordinary meaning of those words.

At best, they could be described as participants in the plan. Given the fact that a prohibition on participation is conspicuously absent from the statute, and the fact that the General Assembly has expressed a desire to make participants in such deceptive plans whole, we cannot say that the trial court erred in ordering appellant to return the funds to appellees. Appellant's first assignment of error is not well taken.

In the second assignment of error, appellant argues that the trial court erred by granting appellees' motion for a temporary restraining order in contravention of Civ.R. 65(A). This argument is without merit, as the trial court indicated in its March 26, 1997 judgment entry that it stayed execution of portions of the February 25, 1997 order under the authority of Civ.R. 62(A), rather than Civ.R. 65(A). This provision reads:

"(A) Stay on motion for new trial or for judgment. In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of any judgment or stay any proceedings to enforce judgment pending the disposition of a motion for a new trial, or a motion for relief from a judgment * * * ."

As appellees filed a motion for relief from judgment, Civ.R. 62(A) was applicable and provided authority for the court to stay execution of certain aspects of the February 25, 1997 judgment entry. Appellant's second assignment of error is without merit.

In light of the foregoing, appellant's two assignments of error are without merit. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

NADER and WILLIAM M. O'NEILL, JJ., concur.