OPINION
On August 23, 2000, Betty D. Montgomery, Attorney General of the state of Ohio (hereinafter "Attorney General"), pursuant to the authority vested in her under the Ohio Consumer Sales Practices Act, R.C. Chapter 1345.01 et seq. ("CSPA"), filed a complaint in the Franklin County Court of Common Pleas against Purchase Plus Buyer's Group, Inc. ("Purchase Plus"). The complaint averred that Purchase Plus had engaged in conduct which violated the CSPA and related administrative rules.
Purchase Plus filed an answer. On May 30, 2001, Purchase Plus filed a motion for judgment on the pleadings and for partial summary judgment. Purchase Plus requested judgment on the pleadings as to Counts One, Two, Four and Five of the complaint on the basis that the CSPA did not apply to the transactions alleged. Purchase Plus sought summary judgment as to Count Three and as to a portion of Count Two. The Attorney General filed a memorandum contra, and Purchase Plus filed a reply.
On August 20, 2001, the trial court journalized a decision and judgment entry. The trial court granted Purchase Plus's motion for judgment on the pleadings. The trial court based its decision, in large part, on "facts" that it presumably gleaned from materials that the parties had attached to their respective memoranda in support of or contra the motion for judgment on the pleadings and for partial summary judgment. For example, the trial court stated:
 Purchase Plus was * * * in the business of selling products on a wholesale basis to members of its buyer's group under a network-marketing scheme. Its product line consisted mainly of prepaid phone cards, which were sold to members under various business "plans." The plans ranged in price from approximately $400.00 to $3,800.00.
 Members of the buyer's group were referred to as "Associates." To become an Associate, prospective members were required to sign an application form, in which they agreed to be independent contractors and to sell more than fifty percent of the products ordered from Purchase Plus to non-Associate consumers. In exchange for selling the products, Associates were entitled to receive commission payments * * *. [Trial court decision at 1-2.]
The trial court found that the Associates ordered products from Purchase Plus for primarily a business purpose and that although the Associates were encouraged to make personal use of the products, they had agreed in an application form to sell more than fifty percent of the wholesale products to non-associate consumers. Id. at 9. Therefore, the trial court concluded that the Associates had agreed to use the products for primarily a business purpose and that in exchange for making sales of the products, the Associates were entitled to a commission. The trial court stated that this was the "hallmark" of a business transaction. Id.
Further, the trial court rejected the Attorney General's argument that Purchase Plus had engaged in a pyramid scheme which, under case law, had been found to be subject to the CSPA. The trial court stated that the complaint did not support an assertion that Purchase Plus was operating a pyramid scheme and that the Associates bought wholesale products in order to resell them and earn commissions, thus earning money separate and apart from soliciting new participants. Id. at 8.
The trial court concluded that the Associates joined the Purchase Plus buyer's group for the purpose of beginning a new business venture and, therefore, the CSPA was not applicable. Accordingly, the trial court granted Purchase Plus's motion for judgment on the pleadings and dismissed all of the counts as each count was based on application of the CSPA or administrative rules relating to such. Purchase Plus's motion for summary judgment was rendered moot.
The Attorney General (hereinafter "appellant") has appealed to this court, assigning the following error for our consideration:
 The trial court erred in granting Defendant-Appellee's motion for judgment on the pleadings by ruling that the case involved business and not consumer transactions, thus falling outside the jurisdiction of the Consumer Sales Practices Act.
We begin by setting forth the standard of review in ruling on a Civ.R. 12(C) motion for judgment on the pleadings. Civ.R. 12(C) motions are specifically for resolving questions of law. State ex rel. Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565, 570. In ruling on the motion, the court is permitted to consider both the complaint and answer. Id. at 569. A court must construe as true all of the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. Whaley v. Franklin Cty. Bd. of Commrs. (2001), 92 Ohio St.3d 574, 581. In order to grant the motion, the court must find beyond doubt that the plaintiff can prove no set of facts in support of the claim(s) that would entitle him or her to relief. Pontious at 570. Our review of the appropriateness of judgment on the pleadings is de novo. Fontbank, Inc. v. CompuServe, Inc. (2000),138 Ohio App.3d 801, 807, discretionary appeal not allowed in (2000),90 Ohio St.3d 1493.
Prior to conducting our review of the appropriateness of judgment on the pleadings, we must address the issue of what materials may be considered in ruling on such a motion. Purchase Plus (hereinafter "appellee") asserts that this court and the trial court can consider appellee's "Independent Associate Application" (hereinafter "application") which contained certain terms and conditions relating to the plan at issue. Appellee relies on certain terms set forth in such application in support of its argument that the transactions were primarily for business purposes and, therefore, outside of the CSPA.
Appellee relies on Pontious in support of its assertion that consideration of the application was proper. In Pontious, the Supreme Court stated, in the context of whether or not an abuse of discretion had occurred, that the allegations in the complaint as well as the incorporated exhibits did not establish an abuse of discretion. Id. at 569. In support of its consideration of the incorporated exhibits, the court cited State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn. (1995), 72 Ohio St.3d 106. Appellee's reliance on Pontious is misplaced.
In State ex rel. Edwards, relied upon by the Pontious court, the Supreme Court stated that a Civ.R. 12(B)(6) dismissal is proper where a mandamus claim arises from a contract which is incorporated in and attached to the complaint and where the contract indicates that the relief requested is not warranted. In the case at bar, however, the application was not attached to any pleading. Rather, it was attached to appellee's motion for judgment on the pleadings. Civ.R. 10(C) states:
 * * * A copy of any written instrument attached to a pleading is a part thereof for all purposes.
In Fontbank, supra at 807, this court stated that a determination of a Civ.R. 12(C) motion is restricted solely to the allegations in the pleadings and any writings attached to the complaint. Further, in ruling on a Civ.R. 12(C) motion, a court is not permitted to consider evidence outside of the pleadings. Euvrard v. The Christ Hosp. (2001),141 Ohio App.3d 572, 575, discretionary appeal not allowed in (2001),92 Ohio St.3d 1433. Again, in the case at bar, there were no materials attached to any of the pleadings. Hence, the trial court erred to the extent it considered any materials outside the pleadings. In our independent review of the appropriateness of judgment on the pleadings, we consider only the complaint and answer. We acknowledge that appellant does not oppose our consideration of appellee's application. However, items and exhibits outside the pleadings are only to be considered in the context of a motion for summary judgment. As noted above, the trial court did not grant summary judgment or partial summary judgment.
The issue in the case at bar centers on whether the allegations in the complaint involve consumer transactions subject to the CSPA or involve business transactions for which the CSPA has no application. R.C.1345.01(A) defines "consumer transaction" as:
 * * * [A] sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. * * *
The parties focus on whether or not the alleged transactions involved the transfers of the above-mentioned items for purposes that were primarily personal, family or household. Appellee argues, and the trial court agreed, that the transactions at issue were for business purposes, specifically, that appellee offered business opportunities to persons called "Associates" and that these Associates agreed to sell — not use — over fifty percent of the wholesale products they ordered. Therefore, appellee asserts that the transactions between it and the Associates did not involve transfers that were primarily for personal, family or household purposes; rather, the transfers were primarily related to a business purpose.
Again, we look only to the complaint and answer and construe as true all material allegations, with all reasonable inferences to be drawn therefrom, in favor of appellant in order to determine if the transactions alleged could fall under the CSPA. The material allegations taken from the complaint are as follows:
 2. [Appellee] is engaged in the business of soliciting for sale and selling products and marketing services for its buyers group that include the purchase of various items including phone cards, computer related services and other products.
 3. Consumers are encouraged to use the products and to sell at least fifty percent of the product to non-associates.
 4. Advertising occurs through the media, printed materials and word of mouth.
 5. Consumers have typically paid approximately $400.00 for a business plan-single pack, approximately $1,950.00 for a business plan-5 pack and approximately $3,800.00 for a[n] executive plan-10 pack.
* * *
 7. Consumers could earn money by recruiting new members into the program, or by simply letting the Defendant recruit and sell for them, the option chosen by the majority of the consumers.
* * *
 9. [Appellee] has made changes to its commission structure, decreasing the maximum commissions after consumers have already made purchases.
 10. Consumers have received phone cards from [appellee] that were not activated and provided no benefit to the consumers.
 11. [Appellee's] contract promises refunds for consumers who return literature and products within time periods that have varied during the program.
 12. Consumers have failed to receive refunds from [Appellee] when they have cancelled pursuant to the contract or for other valid reasons.
 13. Consumers have not received commissions that they are owed by [appellee.]
Count One of the complaint states:
 16. [Appellee] has committed unfair, deceptive and unconscionable acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.02(A), R.C. § 1345.02(B)(1) and R.C. § 1345.03(A) by failing to pay commissions earned by consumers pursuant to the terms of [Appellee's] marketing plan.
The facts alleged in the complaint are not a model of clarity in regard to exactly when and how commissions were earned and/or paid. The complaint states that Associates were encouraged to sell at least fifty percent of the products, that Associates bought business plans for varying amounts and that Associates could earn money by recruiting new members or by letting appellee recruit for them. However, the complaint does not state specifically that commissions were earned by selling products. The complaint does not set forth the terms of appellee's marketing plan. The complaint does state specifically that Associates could earn money by the recruitment of new members.
We must construe the material allegations and any reasonable inferences drawn therefrom in favor of appellant. Thus, we can infer from the allegations that commissions were supposed to be paid for selling products and for recruiting new members. To the extent a commission may have been earned by selling a product, a claim under the CSPA is improper because a consumer transaction between appellee and the Associates did not occur. Rather, these types of transactions would involve, in essence, appellee supplying the Associates with products which the Associates would in turn sell to consumers. This type of transaction is more appropriately categorized as a business opportunity for the Associate, as the Associate would be selling the product as opposed to personally using the product in a personal, family or household capacity.
However, to the extent a commission may have been promised or paid for recruiting new members, there is case law that lends support for application of the CSPA in such a situation. In State ex rel. Celebreeze v. Howard (1991), 77 Ohio App.3d 387, motion to certify overruled in (1992), 63 Ohio St.3d 1406, this court addressed the issue of whether or not a situation involving a pyramid scheme would constitute a consumer transaction subject to the CSPA. The defendant in Howard had argued that the situation consisted of a business investment and therefore was not subject to the CSPA. Id. at 393. However, this court stated that pyramidal participation was more appropriately categorized as gambling or an award by chance, as money paid into the scheme did not generate a return by its use in some productive capacity but, rather, depended only upon the solicitation of new participants. Id.
We stated that the totality of the circumstances showed that the plaintiffs were not engaged in the business of investing or as professional gamblers but that they entered into the transaction for the purpose of acquiring greater personal wealth and not for the purpose of beginning a new business venture. Id. at 394. Further, the plaintiffs' payment of monies was an isolated incident and could not be construed as an ongoing pattern that should be considered a business. Id.
Under the facts alleged here, appellant could have a claim under the CSPA to the extent the situation is similar to the circumstances in Howard. It is immaterial that the complaint did not specifically allege that appellee was engaged in a pyramid scheme. Nor is it relevant, at this point in the proceedings, that Associates also had the opportunity to earn money by selling products. The allegations in the complaint, construed in favor of appellant, conceivably set forth a situation similar to the circumstances in Howard, where an Associate may have entered into a transaction with appellee wherein he or she paid money and was promised the ability to earn money solely from the recruitment of new members. Howard concluded that this type of situation or transaction falls under the CSPA. Therefore, to the extent Count One alleges facts consisting of this type of situation, we cannot say beyond doubt that appellant can prove no set of facts entitling her to relief under the CSPA.
Accordingly, judgment on the pleadings as to Count One of the complaint was inappropriate.
The remaining claims, Counts Two, Three, Four and Five, allege the following:
COUNT TWO
* * *
 18. [Appellee] has committed unfair, deceptive and unconscionable acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.02(A), R.C. § 1345.02(B)(1) and R.C. § 1345.03(A) by refusing [to] make refunds to consumers pursuant to the terms of its contract or for other valid reasons, including, but not limited to, [appellee's] failure to pay earned commissions or to provide products in working condition.
* * *
COUNT THREE
* * *
 20. [Appellee] has committed unfair and deceptive acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.02(A) and the Failure to Deliver Rule, O.A.C. § 109:4-3-09(A)(2) by accepting money from consumers for goods or services and then permitting eight weeks to elapse without making shipment or delivery of all goods in working condition, making a full refund, advising the consumer of the duration of an extended delay and offering to send a refund within two weeks if so requested, or furnishing similar goods or services of equal or greater value as a good faith substitute.
COUNT FOUR
* * *
 22. [Appellee] has committed unfair, deceptive and unconscionable acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.02(A) and R.C. § 1345.03(A) by making false statements in advertisements, including, but not limited to, statements describing product quality and that commissions will be paid on time.
* * *
COUNT FIVE
* * *
 24. [Appellee] has committed unfair and deceptive acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.02(A) and the Exclusions and Limitations in Advertisements Rule, O.A.C. § 109:4-3-02(A) by failing to clearly and conspicuously state, in close proximity to the offer, all material exclusions, reservations, limitations, modifications, or conditions of their program including, but not limited to, [appellee's] ability to change terms of the program such as commission percentages and amounts that could be earned.
The facts as alleged in the complaint, construed in favor of appellant, show that a transfer of an item of goods for purposes that were primarily personal, family or household did occur. The complaint alleges that Associates were encouraged to use the products. The fact that the Associates were also encouraged to sell at least fifty percent of the products does not take the entire case out of the CSPA. In Brown v. Liberty Clubs, Inc. (1989), 45 Ohio St.3d 191, 192, the Supreme Court addressed a situation where brochures regarding the sale of campsite lots had been sent to persons and that such persons were promised gifts for visiting the premises. The plaintiffs visited the premises, listened to a sales pitch regarding the purchase of a lot, and were each given sets of steak knives. Id. The plaintiffs purchased lots. Id. Lawsuits alleging violations of the CSPA were later brought against the seller of the lots.
The Supreme Court stated that the CSPA does not apply to pure real estate transactions. Id. at 193. However, the Supreme Court found that the solicitation and transfer of the steak knives constituted a consumer transaction. Id. The Supreme Court held:
 The Consumer Sales Practices Act, embodied in R.C. Chapter 1345, is applicable to the personal property or services portion of a mixed transaction involving both the transfer of personal property or services and the transfer of real property.
Id. at syllabus.
In the case at bar, it can be inferred from the complaint that at least some of the transactions complained of consisted of the transfer of goods that were used by the Associates for personal, family, or household purposes. In other words, the product was not used for a business purpose, rather, it was used personally by the Associate and not sold. Under the rationale set forth in Brown, these types of transactions could be subject to the CSPA.
We note that appellee relies heavily, as did the trial court, on Tomes v. George P. Ballas Leasing, Inc. (Sept. 30, 1986), Lucas App. No. L-85-359, unreported. In Tomes, the court stated that the general rule for determining whether a consumer transaction has been entered into between the parties must be determined at the point in time when the parties entered into a binding agreement. Appellee's argument focuses on the points in time when Associates agreed to the terms on the application form. However, as discussed above, the application is not properly before this court in the context of a motion for judgment on the pleadings. The pleadings, construed most strongly in favor of appellant, do not contain any facts regarding when any Associate allegedly entered into an agreement, what the Associate's intentions were at that time, or what the actual intentions of appellee were at that time. Hence, while this court has no argument with the general principles set forth in Tomes, such principles do not yet further appellee's argument.
To the extent the complaint alleges appellee failed to make refunds, failed to timely deliver goods, failed to ship goods in working condition, falsely advertised these products, or engaged in any other unfair, deceptive or unconscionable act in connection with products or services used in a personal, family or household capacity, appellant has set forth facts which would entitle her to relief under the CSPA. Therefore, judgment on the pleadings should not have been granted.
To the extent the allegations in Counts Two, Three, Four and Five involve commissions, our previous discussion of State ex rel. Celebreeze, supra, applies, and judgment on the pleadings in this context was also inappropriate.
For all of the above reasons, we cannot say beyond doubt that appellant can prove no set of facts that would entitle her to relief under the CSPA. Hence, judgment on the pleadings should not have been granted. Accordingly, appellant's assignment of error is sustained.
We note that our ruling does not determine the ultimate merit of appellant's claims under the CSPA and related administrative rules. However, at this stage in the proceedings, given the standard of review for Civ.R. 12(C) motions, construing the allegations in the complaint in favor of appellant, given the case law discussed above and the fact that the CSPA is a remedial statute that must be liberally construed,[1]
judgment on the pleadings simply was not appropriate.
In summary, appellant's sole assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to such court for further appropriate proceedings.
Judgment reversed and cause remanded.
LAZARUS and BROWN, JJ., concur.
[1] The general principle that remedial acts should be liberally construed applies to the CSPA when determining the capacity (business or personal) of a party to a transaction. Howard, supra, at 393.